Kent, Ch. J.
delivered the opinion of the court. The lessors of the plaintiff showed a valid title to the premises, deduced from Philip and Andrew P. Skeene, the common source of title set up by both parties. None of the objections to the soundness of this chain of title were well taken.
1. There was sufficient evidence of a sale of the premises, as forfeited property, by Alexander Webster, one of the commissioners of forfeitures, to Jeremiah Burrows, in December, 1784. The evidence of this fact consisted in the testimony of Mary Burrows as to the existence, loss and contents of the deed, and the official report of the sale made by Webster in pursuance of the directions of a statute, and on file in the surveyor-general’s office. The plaintiff next showed a judgment against Burrows, and a sale of the premises under an execution founded on that judgment, and a deed from the sheriff to Moses Martin, of whom the lessors of *392 the plaintiff are the heirs at law. The judgment was docketed kt September, 1786, and the execution bore *est in August pre« ceding; and though it was suggested that there was a variance between the judgment and the execution, yet on examination no such variance appears, even if we were to admit that the existence of it would have been fatal. There is a difference of one shilling between the sum mentioned in the execution, and the sum mentioned in the toto se attingunt clause, at the end of the judgment record. But that clause is only a clerical addition of the amount of the judgment, and is no part of it; and if the sum in the judgment be different it will prevail. The judgment record is not set forth at large, but the amount of the damages assessed and of the costs taxed are stated, and as those costs are taxed as being of increase, and as it was formerly the practice for the jury to assess Qd. for costs, (on which was supposed to be founded the taxation of increase,) and as these costs of Qd. were endorsed on the execution, we have the best reason to infer that they were in the judgment record, and that additional item of sixpence would give the identical sum specified in the execution. The error in the calculation at the foot of the record is to be overruled or disregarded.
The execution was according to the ancient, practice, before the revision of the laws in 1788. It always issued against the goods and chattels, lands and tenements, promiscuously, and this was a consequence of the statute of 5 Geo. II. c. 7. which made real estate in the then English colonies, chargeable with debts, and subject to like remedy and process, by seizing and selling, as personal estate.
2. There was not any fatal misrecifal of the execution in the sheriff’s deed. Such recital xvas no necessary part of the deed, and a variance would not be material, nor affect the validity of the deed, so long as there was existing a sufficient power to warrant the sale. (Holt, Ch. J. in 3 Chan. Cas. 101. 9 Johns. Rep. 90.) But there xvas no substantial mistake. The recital specified the true sum in the execution; and only called it debt; and that the sheriff was commanded to levy that sum and 34s. of costs. This last sum evidently referred to the poundage, xvhich, by the endorsement on the execution, the sheriff was like wise commanded to lexry.
3..The title set up by the defendant was clearly unavailing.
The deed from Webster to Williams, if otherwise genuine, xvas subsequent to the sale and deed to Burrows, and; consequently, of
*393 effect. The assIgnment of th~ mortgage to Williams was not ~1nly proved, as there was no proof of the seal of the corporation by whom it was alleged to have been assigned, and the seal did not prove itselj~ The i~ourt were not to know, and could not know, without proof, that the seal was genuine. It required the same proof as the seal of an individual; for the corporation in question was not an. institution of such notoriety as that its seal would prove itself, like that of one of our own courts of justice. (Peake’s Ev. 48. n. Q.) The mortgage was not to be received as a subsisting outstanding title. Assuming that Williams, by means of the possession of the mortgage, was to be considered as the agent of the mortgagees, yet no steps had been taken to put the mortgage in force, nor had any demand under it been made for upwards of 19 years previous to the trial; and from the payments which had been made at that time and before, and the silence of any claim under it, the jury would have been well warranted to have presumed it satisfied» The defendant did not set up any title under it, but he set up a title under Williams, who, at the time he parted with his assumed title, alleged that he had purchased the premises of the heirs of Martin. It was also held by this court, in the case of Collins v. Torry, (7 Johns. Rep. 278.) that a stranger not claiming title under a mortgage, was not to be permitted to set it up to defeat a legal title.
The plaintiff is, consequently, entitled to judgment.
Judgment for the plaintiff.