**128]** *LESSEE OF JER. ARMSTRONG *v*. JOHN McCOY.

Where there has been a sale of real estate upon execution, and an order for a deed, these proceedings lay the foundation to admit parol testimony that a deed was executed and delivered.

Where a sheriff's deed recites so much of the executions and other proceedings, as shows a clear and undoubted authority for its execution, such recitals are sufficient.

THIS cause was adjourned from the county of Franklin. it was an ejectment, to be determined upon proofs involving naked questions of fact and law.

The plaintiff laid two demises and claimed under two distinct chains of title, derived from two different sources, both of which were judgments and executions against the same defendant.

The first chain of title was deduced from a judgment, West *v*. McCoy, in Franklin county. The proof consisted of the judgment, execution, levy, sale, confirmation, and the order that the deed to the purchaser be made, with the deposition of the person who officiated as sheriff, in making the sale, to this effect.

"That in executing deeds, as sheriff, it was his uniform habit to

Lessee of Armstrong *v.* McCoy.

have such deeds acknowledged and attested by two witnesses; that, in this case, he has no doubt that a paper purporting to be a deed, was given to the purchaser, and none, that the deed was properly acknowledged and witnessed. The witness had an impression that it was in his own store that he delivered the deed to the purchaser."

The purchaser was James Conger. The proof farther showed that McCoy, whose title Conger purchased, had been in possession many years, perhaps twenty or more. That soon after the sheriff's sale, Conger went into possession, and held it two or three years. That, in the spring of 1834, Conger ran away and abandoned the possession, upon which McCoy again entered into it, and continued to hold.

The second, or continuous chain of title, was founded upon a judgment against Conger, execution upon which was levied on the land in question, McCoy being in possession, at the time of the levy. A sale on the execution and levy was perfected, and C. Fox became the purchaser. In making the deed to Fox, the sheriff failed to recite all the writs of execution, that had issued as the foundation of the sale. After issue joined, on this fact, a second deed was made to Fox, containing these recitals. Fox had conveyed to the lessor of the plaintiff.

WILCOX, for the plaintiff:

The proofs are believed to be sufficient *prima facie* evidence of the existence of the sheriff's deed to Conger. The proof *might be more *conclusive*, were it not left to inference [129 that McCoy, soon after Conger left the country, for the first time discovered that the deed was not on record, and *therefore*, he retook the possession.

It is a presumption of law, that every officer does his duty.

The non-recital of the executions does not vitiate the sheriff's deed to Fox.

The statute is merely *directory*. Lessee of Allen *v.* Parish, 3 Ohio, 187.

This objection is removed by second deed, which is admissible by relation. 3 Cowen, 75, and cases there cited.

Admitting the objections thus far taken to be valid, the plaintiff insists upon a recovery on other grounds.

McCoy had been in the possession for many years. There was a *valid sale* of the premises to Conger. The sale was *confirmed*

and a deed *ordered.* Shortly after the sale, Conger is found in the quiet possession of the premises, which he continues to hold undisturbed for more than four years, when he left the country to avoid his creditors. Upon this state of facts, supposing no deed to have been actually made, the law will presume that McCoy peaceably surrendered up the possession to Conger, who had a right to the premises, because he had bought them, and had paid his money for them, and which money was applied to McCoy's debts. By this surrender of the possession, Conger acquired a *right to the possession,* such as could not be defeated by the subsequent *bare entry* of McCoy. Conger being thus in the *actual possession,* and having in him the *right of possession,* the execution from Hamilton county is levied upon the premises, and, by the subsequent sale, the right of Conger passed into Fox, and from Fox to Armstrong, the lessor of the plaintiff. The principle is analogous to that of Maynard's Lessee *v.* Cable, before Judges Collett, Lane, and Wright. Wright, 18.

Admitting further, that both the deeds to Fox, by the sheriff, are void, still the plaintiff may well recover on the demise to Conger. The surrender of McCoy to Conger gave to Conger the *right of possession,* which, as above stated, could not be defeated by the subsequent bare entry of McCoy, which was tortious. The sale, by the sheriff, to Fox, not passing anything, by reason of the invalidity of the deed, this *right of possession,* acquired by the voluntary surrender of McCoy, is still vested in Conger, and on his demise is sufficient to recover the possession *against McCoy,* whose entry and possession are tortious.

130] *G. SWAN, for defendant:

The first question that arises in this case is, whether a sheriff's deed is effective as a conveyance when only one of many executions is recited in it. The statute, vol. xxix, 105, sec. 16, declares, that "sheriffs' deeds shall recite the execution or executions, or the substance thereof, the names of the parties, the kind of action, the amount, date of the term, etc., *and shall be acknowledged,*" etc. These recitals appear to be as necessary to the validity of the conveyance as the "acknowledgment;" and if courts may dispense with the recitals as directory, there seems to be no reason why the acknowledgment might not be treated in the same manner. We deem this point worthy of consideration by the court, as one frequently arising, and which has never been adjudged in a manner that may

Lessee of Armstrong v. McCoy.

be a guide to the profession, while we entertain doubts whether such recitals should be taken as directory to the officer and not essential to the validity of the conveyance. The plaintiff has treated the question as important, and has, since the commencement of the suit, attempted to strengthen his grip by procuring another deed under the sale upon Conger's mortgage to Matthew and Hopkins, with all the recitals required by statute; but as the title accrued after action, it can not be used. 3 Bibb, 297; 3 Marsh. (Ky.) 134; Till. Adams, 189.

But we depend principally for the defendant upon the insufficiency of proof as to the execution of the deed asserted to have been made to Conger by the sheriff. It is a well-settled principle, that after laying the foundation for the admission of secondary evidence, the party must prove the execution of the original and lost instrument, in precisely the same manner as if the same were present. 1 Starke's Equity, 303. When sufficient evidence is given of the loss of the deed, its execution must be proved according to the nature of the instrument; if a deed, by subscribing witness, or proof of his handwriting, if he be dead, or that of the obligor if the deed be not attested. So if a note be lost. 1 Atk. 446.

The law is laid down stronger in 1 Saund. Pl. and Ev. 517, 518. When a party asserts the execution of a deed, he must prove the same, and all the requisites attending its execution. The sealing and delivery must be proved by a third person, if no subscribing witness, and by such subscribing witness if there is one. Authorities might be multiplied to this point, but it is supposed enough has been cited to satisfy the court, that the point *taken is well established. Deeds of conveyance, in this [131 state, must be signed and sealed by the grantors, in the presence of two witnesses, who shall attest such signing and sealing, and must be acknowledged before a judge, etc. 29 Ohio L. 347. If the deed under consideration had no subscribing witnesses, it is not valid as a legal conveyance and can not sustain the action of ejectment as against a stranger. This principle is too clear to require authorities to support it. If there were attesting witnesses, they, or one of them, must be produced, or it must be shown that they are absent or dead. The authorities cited show this; and, indeed, all our adjudged cases have been that such witnesses are the best evidence. Then this alleged conveyance from·

the sheriff to Conger, either had, or had not, subscribing witnessess. If it had not, the deed can not avail as a conveyance to defeat the possession of the defendant; if it *had,* then such witnesses, or one of them, must be produced, or their absence accounted for. The testimony of the grantor is, " that if there were subscribing witnesses, he does not recollect who they were, nor does he recollect whether there were any—does not recollect,. if it was acknowledged, before whom such acknowledgment was taken." To obviate this evident deficiency in the proof, the witness is cross-examined to make out evidence of the due execution by " *travit.*" This mode of proving the execution of a solemn instrument upon which land titles depend, comes under some head of evidence which has escaped the research of counsel. Indeed, the witness has no distinct recollection, which, if competent, would enable a' jury to find any one of the great essentials which give validity to . a deed of conveyance. He neither recollects the signing, sealing, acknowledging, nor even the delivery of the deed to Conger. Has this court any proof that there were two, or even one, attesting witness to the deed? Is there evidence of acknowledgment? The whole testimony is deficient, even if it were not secondary, and for that reason inadmissible. We say, with confidence, the existence of the deed as a 'conveyance is not proven; and if it were, it is not by that primary evidence that the usages of law require. The law so abhors parol evidence, that the doctrine is quite recent which allows it to be used when deeds are lost. Sir Edward Seymour's case, 10 Mod. 8. The court were of opinion, that when a deed was lost, you might prove by copy, but the contents could not be proved by those who knew the deed. The rule, although enlarged in modern times, is still applied with great caution. In 1 132] Car. & P. *282; 11 Eng. C. L. 394, the court held, that when a letter was sent by a father to a daughter, and the son and daughter searched for it, the son could not be a witness, and the party was nonsuited because the daughter was not present. The plaintiff, then, has no ground to recover upon his paper title.

It is urged by the plaintiff, that he has a right to recover upon the ground of priority of possession, or upon the sale and confirmation to Conger, in whose name there is a demise in the declaration, Upon the subject of possession, the witness simply proves that McCoy had been in for many years, that Conger then got possession and afterward abandoned it. How this possession

was obtained by Conger, the witness does not know, and he is equally ignorant in what manner McCoy re-entered. Upon this part of the case, we have evidence of a naked possessory title, without any higher claim by either, and it was settled that the eldest possession, or the actual possession, must prevail, where there is no superior title. 10 Johns. 338; 5 Litt. 319; 7 Ohio, 146.

There is no evidence that Conger entered adversely to McCoy; the fair presumption is, that he either entered under McCoy or in his own wrong, and this is fortified by the fact, that he either voluntarily abandoned the premises or peaceably surrendered them to the prior possessor. In either case, the action can not be sustained upon Conger's demise. If Conger abandoned the possession, the entry of McCoy can not be taken as tortious as to him. Having a mere naked possession, and abandoning that, he gave up all claim to the premises. The evidence does not show that he entered at all under color, or claim of title; nor does it appear whether the last entry of McCoy was other than upon vacant premises. The actual possessor has title against all the world, except the legal owner, or when he has committed an actual ouster of a prior possessor. In any possible view of this part of the case, the plaintiff shows no right to recover, upon the title of possession by Conger. Did Conger's possession gain anything by the levy of the execution, the sale, and confirmation? This court determined, in the case of Reynolds v. Rogers, 5 Ohio, 174, that neither a levy upon land, or a sale and conveyance, effects a transfer of possession. This question is ably examined by Kent. 8 Johns. 548–550. The issuing a *fi. fa.* is to give effect to the levy. Sale, and all other legal requisites, will not constitute a conveyance, but at most *a contract* for a conveyance. Ib. 550. We confidently expect a judgment for the defendant.

*WILCOX, in reply : [133

By looking at the sheriff's deed to Fox, it will be seen that it recites correctly the names of the parties, the kind of action, the amount and date of the judgment, and the execution, by virtue of which the levy was made. The *vendi.*, upon which the sale was made, is not recited. It is, however, presented to the court, and the sale, in every respect, is in conformity with the law. The power exists, and has been well executed. In such cases it is a familiar principle that misrecital, or non-recital, will not vitiate. Indeed, the counsel for the defendant do not seem to press the

point.   If the authority cited in the opening, 3 Cowen, 75, be good law, the objection seems entirely removed upon the principle of relation, and that authority seems not to be questioned.

The case was supposed to be submitted to the court, in the county, *mainly* upon questions of " law."   The principal question now made seems to be a matter of " fact," in regard to which, it would seem, that argument can be of little use.   Most that can be said on the part of the plaintiff is, that it is believed the evidence is, *prima facie*, sufficient to entitle him to a verdict of a jury. This part of the case seems to have been decided by this court in the ejectment case from Richland county, in which the opinion of the court was delivered by Judge Hitchcock, on Monday morning, the 11th instant.   A case in point, also, is Jackson *v.* Woolsey, 11 Johns. 446.   There had been a partition, and the court had ordered two commissioners to make a deed.   An action of ejectment was subsequently brought, in which the existence and due execution of this deed was made a question.   Neither the original nor a copy was produced.   One of the commissioners testified " that the farm was sold to Gillespy; that he had not a positive recollection of executing a deed, but had not the least doubt that he and Denniston, another commissioner, since dead, gave the deed, and was certain that a deed must have been executed, though he had now no remembrance of the fact."   Wilkin, the attorney, testified " that he wrote a deed to be signed by the commissioners, and the draft of which he had."   There was no evidence whatever that the deed was ever *sealed*, or *witnessed*, or *acknowledged*. The court say " the circumstances of this case would warrant a jury to presume that the deed alleged to have been given by the commissioners had been duly executed by them in pursuance of the order of the court of common pleas, and if so, this court are bound to presume it."   Ib. 456.

134]   *The circumstances of the case before the court are peculiar.   Conger purchased the premises at sheriff's sale, and went into possession.   He did not record his deed.   While he is thus in possession judgment is rendered against Conger, and a levy made on the premises, under which the present plaintiff claims. Before the sale Conger runs away, insolvent, and carries with him his unrecorded deed, and goes to parts unknown.   In the meantime the defendant enters without any apparent right.   The sale is made to Fox.   Now, it is submitted that under these circum-

Lessee of Armstrong v. McCoy.

stances the plaintiff has made out a strong *prima facie* case for a jury.

The sale of Conger was a valid one.

He paid the consideration money.

The sale was confirmed, and a' deed ordered by the court.

It was the *duty* and for the *interest* of the sheriff to make the deed.

It was for the *interest* of Conger to receive a deed.

It is easy to conceive why a man, in failing circumstances, should not put his deed on record.

Soon after the sale Conger went into possession.

The sheriff, who made the sale, testifies that he has no doubt but that he gave a deed to Conger duly witnessed and acknowledged, and thinks he gave it to Conger in his store.

The defendant has received the pay for his land, gave up the possession till Conger ran away, and then entered in his own wrong, and is now enjoying the land, and the money, too, which Conger paid for it. May we not insist that this, to a jury, would be presumptive evidence of the existence of a deed to Conger?

The counsel for the defendant do not seem to meet the argument in regard to the possession. It is not a case of *priority* of possession. For the purposes of this argument, a *legal paper* title may be admitted in McCoy. The point, then, is this: There was a valid sale on execution; the purchase money was paid, and the proof in the cause raises a legal presumption that McCoy voluntarily surrendered the possession to Conger. It is tantamount to a *contract* of sale in which the possession is delivered to the vendee. This gives a right of possession to Conger, which can not be defeated, by the subsequent entry of McCoy, without right. The proof in the cause shows that Conger left the country to avoid his creditors. This did not affect his *right* of *possession;* that he carried with him, unless it was divested by the sheriff's sale to Fox. It is not pretended that the sale, confirmation, etc., *per se*, gave any title, or even any *right*, to the *possession*, but they did constitute a good con- [135 sideration for the delivery up of the possession to Conger; and Conger having thus acquired the *actual* possession, he has a *right* to the *possession* as against the subsequent tortious entry of McCoy, or rather that right has passed by the sheriff's sale to Fox. This seems to be exactly the doctrine contained in the last

sentence of Judge Swan's argument. I can not find the case, but admit it to be good law, and hope the court will give us the benefit of it.

Judge GRIMKE delivered the opinion of the court:

If the evidence in this case related to a deed from one individual to another, there would be some reason to doubt whether it was sufficient to show a legal title in Conger. But it is, in this instance, combined with other circumstances which contribute to raise a presumption, exceedingly strong, that such a deed was actually executed. A distinction must be made between those cases where a deed, not produced, is the commencement and end of title, in an individual, and those where the deed, having for its foundation a train of judicial proceedings, is only the consummation of that title. In the first instance, the testimony to supply the production has no necessary connection with the deed; in the second, it may constitute the whole authority for its execution, and may be evidence of a higher nature than the deed itself. In this case, there is proof of the sale, of the return by the sheriff, of the order of confirmation, and that the sheriff made the deed. We think that these facts, connected with the testimony of the witnesses, are sufficient to authorize the presumption that a valid deed was made by the sheriff to Conger. This case is not stronger than that of Jackson *v.* Woolsey, cited by the counsel for the plaintiff. In that case it was decided that commissioners in partition, appointed to make a deed, might be presumed to have made one, pursuant to the order of the court. Nor is this case so strong as the case of Tyburr *v.* Slade, 4 Durnf. & East, 682, where, trustees having been directed to convey to a devisee, on his attaining twenty-one years, it was held that a conveyance might be presumed any time afterward.

It is objected, to the sheriff's deed to Fox, in the case against Conger, that it does not recite all the executions that issued upon the judgment before the sale was effected. This objection is not maintainable. All that is necessary is, that the deed show that the sheriff acted under the execution. This question has been repeatedly raised in New York, and it has been uniformly **136]** *decided in favor of the sheriff's deed. 10 Johns. 381; 18 Johns. 7. It is true our statute declares that the executions shall be recited, and it is often very difficult to distinguish between

those ceremonies which are directory to the officer, and those which are essential to the title. If any one general rule may be laid down, it is, that every prerequisite which can. be considered as constituting the foundation of title, is essential and indispensable, and that whatever does not partake of that character is merely directory. The word *recite* is used in the statute long after it had obtained a technical, legal meaning, when applied to deeds. I refer to the well-known maxim that a recital is not a neccessary part of a deed. But it is unnecessary to decide more than that the recital, which is contained in this deed, showing, as it does, a clear and undoubted authority for its execution, is sufficient. Judgment for the plaintiff.