### AVERILL *vs.* WILSON.

The grantee in fee in either a quit-claim deed, or in a deed containing covenants of warranty, is not estopped from denying that the grantor had any title in the premises conveyed, either at, or previous to the date of the deed.

Such grantee holds adversely to his grantor, and he may controvert such grantor's title, and also fortify his own title acquired from such grantor, by the purchase of any other title which will protect him in the quiet enjoyment of the premises.

An estoppel must be reciprocal.

A stranger can neither take advantage of, nor be bound by, the estoppel.

THIS was an action of ejectment. The cause was tried at the St. Lawrence circuit, in September, 1847, before Justice PARKER. The declaration was entitled of the 7th of May, 1847. On the trial, the plaintiff gave in evidence the record of a warranty deed from Abel Cook and his wife to Abner Breese, dated December 12, 1815, of the premises in question. The certificate of acknowledgment, by the officer who took such acknowledgment, stated that Cook and his wife, " to him known to be the persons who signed the deed, personally came before him," &c. without stating that they were known to him to be the persons described in such deed. The defendant objected to the reading of the deed in evidence, on the ground of this omission in the certificate of acknowledgment. The objection was overruled, and the defendant excepted. The plaintiff then read in evidence the record of a deed with covenants of warranty, from Abner Breese and wife to Loyd S. Danbury, of the premises in question, dated April 28, 1825, recorded May 3, 1825. The certificate of acknowledgment was in the same form as the certificate of the acknowledgment of the deed of Cook and wife to Breese. The defendant took the same objection which he took to that deed; which objection was overruled, and the defendant excepted. The plaintiff then gave in evidence a warranty deed from Loyd S. Danbury to John T. Wilson, dated September 26, 1839, of the premises in question.

Averill *v.* Wilson.

The defendant admitted that he was in possession, at the commencement of the suit, as tenant of John T. Wilson. The plaintiff then gave in evidence the record of a judgment in the common pleas of St. Lawrence county in favor of James Averill 3d and William H. Averill against Abner Breese, for $350 debt, and $7,38 damages and costs, signed and filed December 26, 1823; also a writ of fieri facias on said judgment, tested June 7, 1827, returnable the 2d Tuesday in October then next, endorsed with directions to levy $150 debt and $10 damages and costs, with interest from December 24th, 1823, returned satisfied as to $85,02, and *nulla bóna* as to the residue; also a writ of alias fieri facias, on the judgment, tested May 18, 1832, and returnable the third Tuesday in September then next, endorsed with a direction to levy the residue of the debt, damages and costs. The plaintiff also gave in evidence a certificate of sale signed by Lemuel Buck, sheriff, by George Ames, special deputy, dated December 12, 1832, and sworn to the 15th of December, 1832; which set forth a sale of the premises in question, under the alias fi. fa., to James Averill; also a sheriff's deed founded on such sale, from Lemuel Buck, late sheriff, to James Averill, dated March 30, 1846. The defendants objected to the executions, on the ground that they were issued more than two years after the recovery of the judgment; and to the certificate of sale, on the ground that the unsworn certificate of a special deputy was not competent evidence of his acts; and to the sheriff's deed, upon the ground that it did not set forth the judgment and execution by virtue of which the sale was made, and that the sheriff could not convey so long after the expiration of his term of office. These objections were overruled by the judge, and the defendant excepted. The sheriff's deed recited a fieri facias against the goods and chattels, lands and tenements of Abner Breese, in favor of James Averill 3d and William H. Averill; without referring to the judgment. The defendant then offered in evidence a deed of the premises in question, from Abner Breese and wife to one Jesse Cook, dated March 13, 1819, acknowledged the same day, and recorded July 24, 1841; and then

moved for a nonsuit.   To the reading of this deed in evidence
the plaintiff objected, that as Danbury, the grantor of John T.
Wilson, the landlord of the defendant, had taken a deed from
Breese, of the same premises, in 1825, and as the defendant
claimed under him, the latter was estopped from denying
Breese's title, or showing title out of him in 1819.   And the
judge thereupon denied the motion for a nonsuit, and held that
the defendant was estopped, by the deed from Breese to Dan-
bury, from showing title out of Breese previous to the date of
that deed.   To which ruling the defendant excepted.   The
defendant then offered to give in evidence a patent from the
state, covering the premises in question, to Alexander McComb,
dated in 1789; a deed of the same premises from.McComb to
Samuel Ogden, dated in 1782; a deed from Ogden to William
Cooper, dated in 1803; a deed from the heirs of William
Cooper to Danbury, dated June 1, 1815; a mortgage from
Abel Cook to Danbury, of the premises in question, dated
June 13, 1815; that Danbury went into possession in 1822;
that Breese left the possession in the spring of 1819, and had
not occupied the premises since that time; that Jesse Cook
occupied the premises from the spring of 1819 until 1822, when
he abandoned the premises to Danbury on his mortgage; that
Danbury did not go into possession under the deed of Breese
to him, but that he took possession under his deed from the
heirs of Cooper, and his mortgage, and claimed to be owner by
said deed, and mortgagee in possession.   To all which evi-
dence the plaintiff objected, because the defendant was estop-
ped by the deed from Breese to Danbury in 1825, from going
back of that date; and that the mortgage from Abel Cook to
Danbury was merged in the deed to Danbury.   And the judge
refused to receive the evidence, for the reasons assigned by the
plaintiff; and the defendant excepted.   The defendant then
offered to show an adverse possession in himself and those
under whom he claimed, under the deeds, &c. proved and
offered to be proved, for 22 years.   This evidence was also
objected to by the plaintiff and rejected by the judge; and the
defendant excepted.   The judge directed the jury to find a

Averill v. Wilson.

verdict for the plaintiff; which they did, accordingly. The defendant now moved for a new trial.

*A. B. James & Wm. C. Brown,* for the defendant.

*C. G. Myers,* for the plaintiff.

*By the Court,* PAIGE, J. The objection taken to the certificates of acknowledgment of the deeds from Abel Cook to Breese, and from Breese to Danbury; and the objections taken to the executions, the certificate of sale, and the sheriff's deed, were all untenable.

The cases of *Jackson* v. *Gumaer,* (2 *Cowen,* 552,) and of *Jackson* v. *Osborn,* (4 *Wend.* 558,) establish the sufficiency of the certificate of acknowledgment of the deeds from Abel Cook to Breese, and from Breese to Danbury. The objections that the executions issued after a year and a day, or after two years from the recovery of the judgment, without a revival of the judgment by scire facias, can only be taken by the party against whom they issued. This objection cannot affect the sale. (13 *John.* 102. 1 *Cowen,* 737. 8 *John.* 361.)

The sheriff's certificate of sale is made, by statute, presumptive evidence of the facts therein contained. (2 *R. S.* 370, § 44.) There is no defect in the sheriff's deed. It sufficiently recites the execution on which the sale was made. The judgment and execution need not be set forth, or recited, in the sheriff's deed. It is sufficient if it appears that the judgment and execution were the authority under which the sheriff acted. (*Jackson* v. *Jones,* 9 *Cowen,* 191. 10 *John.* 381.) A sheriff may complete an execution against property by a sale and conveyance after the expiration of his term of office, where he commenced its execution by a levy on the property, during his term of office. The sheriff's deed, although executed long after the sale, being founded on the sale, related back to the time of the sale. (6 *Wend.* 224. 3 *Cowen,* 89, 75.)

The principal question, in this case, arises on the ruling of the judge, that the defendant was estopped, by the deed with

warranty from Breese to Danbury, from showing that the title was out of Breese previous to the date of that deed. An estoppel is by matter of record, by deed or by matter in pais. An estoppel must be reciprocal. It must bind both parties, or neither. "This is the reason that regularly a stranger shall neither take advantage of, nor be bound by, the estoppel. Privies in blood, (as the heir,) privies in estate, (as the feoffee, lessee, &c.) privies in law, (as lords by escheat,) tenant by the curtesy, tenant in dower, and others that come under by act in law, (or in the post,) shall be bound and take advantage of estoppels." (*Coke Litt.* 352, *a.*) Did the warranty deed from Breese to Danbury operate as an estoppel upon the latter, so as to estop him, and all his privies in estate—all claiming under him— from denying the title of Breese at the date of that deed ? It is a well established principle that a mere quit-claim deed, without covenants of warranty, does not estop the grantor from showing that no title passed by such deed. And if it does not estop the grantor, by the principle of reciprocity, it cannot estop the grantee from denying the title of the grantor at the date of the deed. The case of an action of dower brought by the widow of the grantor, against his grantee in a quit-claim deed, or persons claiming under such grantee, was the only exception to the universality of this principle. Until the recent decision of the court of appeals in the case of *Sparrow* v. *Kingman*, (1 *Comstock's Rep.* 242,) such grantee, and those claiming under him, were estopped from denying the seisin of the husband, in an action brought by the widow of the grantor, to recover her dower. In *Sparrow* v. *Kingman* it was decided that the doctrine of estoppel had been improperly applied to an action of dower brought by a widow against the grantee of her husband, or those claiming under him, because the vital principle of estoppels, viz. the principle of mutuality, was inapplicable to such an action. The husband, if living, would not have been estopped by his quit-claim deed from denying that he had any title to the premises conveyed ; and if he would not have been estopped as between him and the grantee, the latter is not estopped from making the same denial. As between the widow

Averill *v.* Wilson.

of the grantor, and his grantee, the widow is not bound by the recitals, and affirmations or allegations in the deed. She is a stranger to it. This was a sufficient reason for not permitting her to estop the grantee of her husband. The estoppel was not reciprocal. As she was not bound by it, she ought not to have been allowed to take advantage of it. The case of *Sparrow* v. *Kingman* overruled the incongruous principle which at an early day was inadvertently admitted among the decisions of our supreme court. The ground assumed, when the doctrine of estoppel was applied to an action of dower by the widow against the grantee of her husband, was, that the acceptance of a deed from the husband, and possession of the premises under it, was an admission of the seisin of the husband, by the grantee and by all coming in under him, and that they therefore were estopped from controverting it. (*Bowne* v. *Potter,* 17 *Wend.* 165, *per Nelson, C. J.* 1 *Caines,* 185. 6 *John.* 293. 7 *Id.* 281. 9 *Id.* 344. 15 *Id.* 21. 2 *Id.* 124. 5 *Cowen,* 301. 12 *Wend.* 65. 2 *Hill,* 303.) The acceptance of a deed from the husband, and possession under it, was regarded as the same, in effect, as entering into possession under a contract of sale, or a lease for life or years from the husband ; in which case it was well settled that the vendee or lessee, while occupying under his vendor or lessor, was not at liberty to dispute the title by which he acquired the possession, or even to purchase in a better title, until he had surrendered the possession. (17 *Wend.* 168. 5 *Id.* 248.) But it is very evident that no relation of landlord and tenant, not even in a qualified form, exists between a grantor and grantee. If the vendor has actually executed a conveyance, his title is extinguished in law as well as in equity. The vendee acquires the property for himself; and he is under no obligation to maintain the title of the vendor. He holds adversely to his grantor, and may treat him as a stranger to the title. The property having become the property of the vendee, by the sale, he has a right to fortify his title by the purchase of any outstanding title which may protect him in the quiet enjoyment of the premises. Chief Justice Marshall, in *Bright's lessee* v. *Rochester,* (7 *Wheat.* 535,) says that "no principle

Averill *v.* Wilson.

of morality restrains him from doing this; nor is either the letter or spirit of the contract violated by it." In *Osterhout* v. *Shoemaker*, (3 *Hill*, 518,) Bronson, J. says, "Although a tenant cannot question the right of his landlord, a grantee in fee may hold adversely to the grantor; and there can be no good reason why he should not be at liberty to deny that the grantor had any title. There is no estoppel where the occupant is not under an obligation, express or implied, that he will at some time, or in some event, surrender the possession. The grantee in fee is under no such obligation. He does not receive the possession under any contract, express or implied, that he will ever give it up. He takes the land to hold for himself, and to dispose of it at pleasure. He owes no faith or allegiance to the grantor, and he does him no wrong when he treats him as an utter stranger to the title." The same views, substantially, are expressed by Chief Justice Marshall in *Bright's lessee* v. *Rochester*, (7 *Wheat.* 535.) He says, (speaking of the sales in that case from the ancestor of the plaintiffs to one Hunter, and from Hunter to the defendant,) "it is very certain these sales do not create a legal estoppel. The defendant has executed no deed to prevent him from averring and proving the truth of the case. If he is bound in law to admit a title which has no existence in reality, it is not on the doctrine of estoppel that he is bound. It is because, by receiving a conveyance of a title which is deduced from Dunlop, the moral policy of the law will not permit him to contest that title. This principle originates in the relation between lessor and lessee, and so far as respects them, is well established and ought to be maintained. The title of the lessee is in fact the title of the lessor. He comes in by virtue of it, and rests upon it to maintain and justify his possession. He cannot be allowed to controvert the title of the lessor, &c. without violating that contract by which he obtained and holds possession. The propriety of applying the doctrine between lessor and lessee, to a vendor and vendee, may well be doubted. The vendee acquires the property for himself, and his faith is not pledged to maintain the title of the vendor. The rights of the vendor are intended to be extinguished by the sale, and he

has no continuing interest in the maintenance of his title, unless he shall be called upon in consequence of some covenant or warranty in his deed. The property having become, by the sale, the property of the vendee, he has a right to fortify that title by the purchase of any other which may protect him in the quiet enjoyment of the premises." In *Watkins* v. *Holman*, (16 *Peters*, 54,) it was held that the relation of landlord and tenant in no sense existed between a vendor and vendee. In *The Society for the Propagation, &c.* v. *The Town of Pawlet, &c.* (4 *Peters*, 506,) Justice Story says, "A vendee in fee derives his title from the vendor; but his title, though derivative, is adverse to that of the vendor. He enters and holds possession for himself and not for the vendor." In Kentucky it is well established that a purchaser who has obtained a conveyance holds adversely to the vendor, and may controvert his title. (*Voorhies* v. *White's heirs*, 2 *Marsh*. 27. *Winlock* v. *Hardy*, 4 *Litt. Rep.* 276.)

Where a grantor who has no title conveys with warranty, any estate subsequently acquired by him will enure to the benefit of the grantee, upon the principle of avoiding circuity of action. The grantor cannot be said technically to be estopped by his deed from averring he had no title when he conveyed; but the warranty interposes and rebuts and bars him and his heirs of a future right which was not in him at the time of the conveyance; and the reason why a warranty, being a covenant, bars a future right, is given by Coke. He says "it is for avoiding circuity of action, (which is not favored in the law ;) as he that made the warranty should recover the land against the tertenant, and he by force of the warranty to have as much in value against the same person." (*Coke Lit.* 265, *a. Jackson* v. *Bradford*, 4 *Wend.* 622. 14 *John.* 194. *Jackson* v. *Bull*, 1 *John. Cas.* 90.) The grantor with warranty is not estopped, by any recitals or allegations in his deed, upon the strict principles of a technical estoppel, from asserting his title subsequently acquired. But it is his warranty which rebuts and bars him of this newly acquired title, and passes it to his grantee, or causes it to enure to his benefit. In fact, in

the usual form of a covenant of warranty, there is no precise and direct assertion of a present title in the grantor, nor a representation that he is the owner, which could operate upon the grantee as an inducement to purchase, and part with his money. But the grantee takes the warranty, and relies upon that, as his indemnity against any defects in the title. It is a rule that an estoppel should be certain to every intent, and therefore if the thing be not precisely and directly alleged, or be mere matter of supposal, it shall not be an estoppel. (2 *Bar. & Adol.* 278. *Co. Lit.* 352 *a.*) In *Right* v. *Rucknell,* (2 *Bar. & Adol.* 278,) where A., having an equitable fee in lands, mortgaged them to B. by lease and release, and the release recited that A. was legally or equitably entitled to the premises, and the releasor covenanted that he was lawfully or equitably seised, &c. and the legal estate was subsequently conveyed to A., and he afterwards, for a valuable consideration, conveyed the same to C., *held* by the court of king's bench, that there being in the release no certain or precise averment of any seisin in A., but only a recital and covenant that he was legally or equitably entitled, C. was not thereby estopped from setting up the legal estate acquired by him after the execution of the release. In this view of the effect and operation of a deed with warranty, upon the rights of the grantor, there is nothing inconsistent in the principle that a grantee in a warranty deed is not estopped from controverting the title of his grantor. If, as is shown by the cases before cited, no relation of landlord and tenant exists between a vendor and vendee after the conveyance from the former to the latter ; if the title of the vendee, although derived from, is adverse to, the vendor ; if the vendee owes no faith or allegiance to the vendor ; if by the sale the title of the vendor is extinguished, and the property becomes the property of the vendee, and he takes the land to hold for himself and to dispose of it at his pleasure, the vendee does the vendor no wrong by treating him as a stranger to the title, by either controverting his title, or by buying in an outstanding title ; although the conveyance from the vendor to the vendee may have been with warranty. In the recent case of *Sparrow* v. *Kingman,*

in the court of appeals, before referred to, Judge Jewett takes a distinction between a deed poll or single deed—a deed made by one party only—and a deed indented, which is signed by all the parties.   He says that "no one at common law, would be bound by it, (a deed poll,) but the grantor, and it would not work an estoppel against the grantee, and I think not as against the grantor."   But he says a deed indented "was stronger than a deed poll, for it worked an estoppel against either party to say or except any thing against any thing contained in it." (1 *Comst. Rep.* 256.)   And he cites, as authority for these positions, *Co Lit.* 47 *b ; Shep. Touch.* 1*st Am. ed.* 53 ; *Right* v. *Bucknell,* 2 *Barn. & Adol.* 278, *Plow.* 434.   Coke, in his Com. on Lit. 47 b,  says, "if the lease be made by deed indented, then are both parties concluded, but if it be by deed poll the lessee is not estopped to say that the lessor had nothing at the time of the lease made."   This rule of Lord Coke, although not now applicable to a lease for years creating the relation of landlord and tenant, may be regarded as applicable to a deed in fee.   Wright, J. in the case of *Sparrow* v. *Kingman,* in the court of appeals, (1 *Comst.* 253,) after stating the definition of an estoppel in pais, as given by Nelson, Ch. J. (8 *Wend.* 483,) adds—"The party who accepts the deed in fee of a grantor having no title, or a less estate than he conveys, performs no act expressly designed to influence, and influencing the conduct of the latter to his injury ; nor does he make any admission which 'in good conscience and honest dealing he ought not to be permitted to gainsay.'   The fraud, if any there be, is on the part of the grantor, and the injury will fall solely upon the grantee, unless he be permitted to show the truth.   There is no relation existing between the grantee in fee and his grantor, which will raise even an implied obligation on the part of the former against a denial of the title and estate of the latter." If the views of Chief Justice Jewett and Judge Wright are correct, then even a deed with warranty does not estop the grantee from controverting the title of the grantor.   After an eviction by title paramount this right has never been doubted.   And I see no reason to doubt the right of the grantee, as between him

and the grantor, before eviction, to show that no title passed by the deed, or that the interest which passed was less than that mentioned in the deed. If the doctrine of estoppel can be applied to the grantee in a deed with covenants of warranty, so as to prevent his controverting the title of the grantor, it would prevent his sustaining an action of covenant on the deed, after an eviction by title paramount. (*Garnet* v. *Wainman,* 3 *Bing. N. C.* 69.)

But if, as between Breese and Danbury, the parties to the deed of 1825, Danbury and those claiming under him are estopped from denying the title of Breese previous to the date of that deed, they are not so estopped as between them and the plaintiff. The plaintiff is neither a party nor a privy to that deed, but is a stranger to it. He does not claim under it. He relies upon the title and estate which Breese acquired previous to that deed, and which he possessed on the 24th of December, 1823, when the judgment under which the premises were sold was docketed. If the plaintiff, then, is a stranger to the deed from Breese to Danbury he is not bound by it. And if he is not bound by it, he cannot take advantage of it. For we have seen that an estoppel must be reciprocal; and that a stranger shall neither take advantage of, nor be bound by, the estoppel. (*Coke Lit.* 352, *a.* *Sparrow* v. *Kingman,* 1 *Comst. Rep.* 248, 288. *Doe* v *Martyn,* 8 *Barn. & Cress.* 497.) In *Jackson* v. *Bradford,* (4 *Wend.* 619,) where an heir, previous to the death of his ancestor, conveyed by deed all his interest in the estate of his ancestor, and a judgment was recovered against the heir previous to such conveyance; and after the descent of the property a sale was had under the judgment, it was held that although the heir should be barred by a covenant of warranty in his deed, from setting up title to the estate, such estoppel did not affect the purchaser under the judgment entered previous to the conveyance creating the estoppel, as he was a stranger to the deed, and relied upon no act of the grantor performed subsequent to the execution of the deed, to give validity to his title. A deed can only estop and bind the parties and privies; privies in blood, privies in estate, and privies in law. It does

not bind those who claim by title paramount to the deed.   It does not bind persons claiming from the parties by title anterior to the date of the deed. (*Carver* v. *Jackson,* 4 *Peters,* 82. *Jewell* v. *Harrington,* 19 *Wend.* 472.)   Upon this principle it was held, in *Sparrow* v. *Kingman,* that the widow was a stranger to the deed executed by her husband to the defendant; viz. that her right to dower rested upon the title of her husband anterior to the date of the deed. (1 *Comst. Rep.* 258.)   In *Garnet* v. *Wainman,* (3 *Bing. N. C.* 69,) which was an action of dower, it was held that as the widow was a stranger to the deed executed by her husband to the defendant, the latter was not estopped from showing that the estate conveyed to him was leasehold, although the deed described it as freehold.

I think, therefore, that the defendant was not estopped by the deed from Breese to Danbury from denying the title of Breese previous to the date of that deed.   The judge therefore, in my opinion, erred in rejecting the deed from Breese to Jesse Cook.   This deed showed a conveyance of the title by Breese in 1819, prior to the recovery of the judgment under which the plaintiff claims, and was fatal to his title.   The other evidence of title offered by the defendant ought also to have been received. It is not necessary, here, to pass upon the effect of that evidence. It is very apparent that Danbury conveyed the premises to Abel Cook at the time Cook gave him his mortgage.   If Breese had the legal title when he, in 1825, conveyed to Danbury, the mortgage estate of the latter became merged in the legal estate acquired by him under his deed from Breese. (2 *Cowen,* 284.) The doctrine of merger at law is invariable and inflexible, although in equity it is controlled by the express or implied intention of the party in whom the interests or estates unite. (2 *Cowen,* 300.)

The defendant offered to show that he did not enter into possession under his deed from Breese.   If this fact had appeared it would have brought the case within that of *Osterhout* v. *Shoemaker,* (3 *Hill,* 518,) in which case it was held that the defendant not having entered under the plaintiff, had a right to show a purchase, while in possession, of an outstanding title

claimed by the plaintiff, and that the conveyance from the plaintiff to him of such outstanding title did not estop him from attacking that title and standing upon his better title, under which he originally entered into possession.

A new trial must be granted.

SAME TERM.    Cady, Willard, and Hand, Justices.