ARTHUR ROBERTSON, RESPONDENT, v. BARNET BURSTEIN, APPELLANT.

Submitted October 26, 1928—Decided May 20, 1929.

For the appellant, *Corn & Silverman.*

For the respondent, *Hyman Busch.*

The opinion of the court was delivered by

PARKER, J.   We conclude that the judgment brought up must be reversed, for the reason that two papers purporting to be assignments by two insurance companies to the plaintiff of their respective claims against the defendant for unpaid premiums, were not authenticated by any testimony at the

trial so as to be admissible as evidence. They were duly objected to on that ground, exceptions were duly taken, and the alleged error has been duly assigned. The point is squarely before us on the merits.

The general features of the case are set out in the opinion of the Supreme Court, *ubi supra,* and need not be repeated here. Taking up the point now in question, the title of the plaintiff as assignee of the claim of the American National Fire Insurance Company was attempted to be shown by offering a paper-reading as an assignment from that company, and purporting to be signed and sealed and attested thus:

"AMERICAN NATIONAL FIRE INS. COMPANY.

[SEAL]                    By JESSE E. WHITE,

*Vice-President.*

Attest: G. E. KRECH,

        *Secretary."*

To which was appended the following in form of a jurat:

"State of New York, County of New York, *ss.*

Sworn and subscribed to by Jesse E. White, Vice-President, and G. E. Krech, Secretary, before me, this sixteenth day of June, 1925.

    J. HOMER REED, Notary Public, Bronx County, No. 19.

        Certificate filed in New York County, No. 304.

        My Commission expires March 30th, 1926.

        County Clerk's certificate attached."

The title of the plaintiff as assignee of the claim of the Sterling Fire Insurance Company was attempted to be shown by offering a similar paper-reading as an assignment from that company and purporting to be signed, and attested thus (no seal appears on the paper as printed):

"STERLING FIRE INSURANCE COMPANY.

By EDW. D. EVANS, *President.*

"Attest:

    [Sgd.] OSCAR L. ROSS,

        *Secretary.*

    County Clerk's certificate attached.

State of Indiana, County of Marion, *ss.*

On this twenty-ninth day of June personally appeared before me Edward D. Evans and Oscar L. Ross, known by me to be respectively the President and Secretary of the Sterling Fire Insurance Company, and who acknowledged to me that they subscribed to the within document as said President and Secretary of the Sterling Fire Insurance Company and acknowledged it to be their free act and deed.

Subscribed and sworn to before me this twenty-ninth day of June, 1925.

My com. exp. Sept. 20, 1926.

[Sgd.] Auro D. Miller,
*Notary Public.*

Telephones, Terrace 4665-4666."

A little reflection will show that the authenticity of these papers was vital to the plaintiff's case. If they were not authentic, the two companies, and not he, were the parties entitled to any recovery, and if under such circumstances he were permitted to rest his case on them without proper proof that they were genuine, the defendant might well be faced with the same claims again on the part of the companies themselves. But when the first of these papers was offered and objected to on the ground that the signature had not been proved, the trial judge said: "It is under seal; I will allow it in evidence." The same objection and ruling were made when the other paper was offered immediately afterward. The Supreme Court invoked the act of 1927 (*Pamph. L., p.* 394), dispensing with the primary necessity of calling a subscribing witness, but seems to have overlooked the proviso that the authenticity and genuineness of the document shall be otherwise properly proved, unless we are to take the opinion as holding that because the papers had the purporting signatures of corporate officers, the purporting seals of the corporations, and the purporting notarial certificates attached, they were to be considered as proving themselves. We agree, of course, that by force of the act of 1927

proof by subscribing witness or explanation of his absence has now become unnecessary: in other words, that the document may be proved as though it had no subscribing witness; but that does not amount to saying that it need not be proved at all, in a case not within some one of the common law or statutory exceptions to the general rule.

Blackstone (III. 367-8) lays down the rule of documentary proof thus: "Written proofs or evidence are—(1) Records, and (2) ancient deeds of thirty years' standing, which prove themselves; but (3) modern deeds, and (4) other writings must be attested and verified by parol evidence of witnesses." The philosophical reason for this rule is discussed in an illuminating manner in 3 *Wigm. Ev.* (*1st ed.*) 2130 (at *p.* 2890) and the author concludes: "Thus it is that in the traditions of the common law a wise emphasis has been placed upon the necessity of supplying the logical element of authenticity for writings. The general principle has been enforced that a writing purporting to be of a certain authorship cannot go to the jury as possibly genuine, merely on the strength of this purport; *there must be some evidence* of the *genuineness* [or execution] of it." Citing cases. The italics are those of the author.

This rule is of daily and hourly application in the case of unsealed writings. Thus in a suit on promissory note, no court would countenance the admission of the note in evidence without admission or proof of its genuineness as the note of the purporting maker—some witness saw him sign, or heard him admit that he had signed, or swear to his hand-writing, and so on; evidence there must be, unless it is waived. And similarly with respect to letters and other documentary evidence. See *Lefferts* v. *State,* 49 *N. J. L.* 26; *Curtis* v. *Hall,* 4 *Id.* 148; *Linn* v. *Ross,* 16 *Id.* 55, 56. In the Curtis case the general rule is thus tersely stated by Mr. Justice Southard: "To render an instrument in writing competent evidence it is necessary that some proof should be given from which the jury can legally infer that it was executed by the party."

With respect to instruments purporting to have been exe-cuted by a corporation, the same general principle applies with the added element in most cases of a corporate seal, as evidencing the act of the corporation. This may be a sur-vival from times when the seal was the really important thing even in the case of an individual, when only clerics could write. 2 *Blk.* 305. Indeed, that author intimates that a signature to a deed may be unnecessary, for he says: "It is requisite that the party whose deed it is, should seal, *and now in most cases I apprehend* should sign it also." (Italics mine.) And on page 306: "It was held in all our books that sealing alone was sufficient to authenticate a deed." See *Osborne* v. *Tunis*, 25 *N. J. L.* 660. Individuals later learned to write—corporations *ex necessitate rei* could not. The rule has long been settled that a private writing purporting to be executed by a corporation and bearing a seal which *is shown by competent evidence* to be the corporate seal of the corpora-tion, is deemed *prima facie* to have been executed by authority of the corporation, and the burden of showing lack of au-thority is on the party alleging it. 3 *Wigm. Ev.* 2169 (2). See *Wells* v. *Rahway White Rubber Co.,* 19 *N. J. Eq.* 402, 404. This was the situation in *Leggett* v. *New Jersey Manu-facuring Co.,* 1 *Id.* 541, where on page 550 the re-port states that it "appeared by the testimony" that the mortgage was signed by the officers and sealed with the cor-porate seal. So, also, in *Manhattan Manufacturing Co.* v. *New Jersey Stock Yard Co.,* 23 *N. J. Eq.* 161, a lease by a corporation, proved for recording and actually recorded, was set up in the bill, and the answer denied merely the authority of the officers to execute it. The same presump-tion was applied. In *Parker* v. *Washoe Manufacturing Co.,* 49 *N. J. L.* 465, a confession of judgment under the cor-porate seal of the corporation was presumed to have been by authority where the seal was shown to be the corporate seal. The earlier case of *Stokes* v. *Pottery Co.,* 46 *Id.* 237, was distinguished, on the ground that in the Stokes case "the bond and warrant were not either of them sealed with the common seal, and here, *according to the proofs,* both are so

sealed." See 46 *N. J. L.* 239. In the later case of *Raub* v. *Blairstown Creamery Association,* 56 *Id.* 262, it appeared that a cognovit purporting to be executed by a corporation had a "common paper seal" (page 264) and the same distinction was made, the court remarking that the Parker case "was a case where there was no question as to the seal being the corporate seal of the company."

But this rule, that a seal admitted or proved to be the corporate seal of a corporation and affixed to a document implies that it was so affixed by proper authority, is a very different matter from the proposition that when a paper in writing is produced in court which has impressed on it something which purports to be the seal of a corporation and has written on it something else purporting to be the signatures of the vice-president, or president and secretary of that corporation, such paper-writing is *per se* admissible in evidence—which was the view expressed by the trial judge—or that if some alleged notary in another state has added some sort of a certificate, that helps the matter; which seems to be the view entertained by the Supreme Court.

Postponing for a moment the matter of statutory interference with the common law, the rule of the latter was stated as early as 1800 in the case of *Den ex dem. Tours* v. *Vreelandt,* 7 *N. J. L.* 352, where the precise question was whether the trial court erred in excluding from evidence an alleged lease purporting, but not proved, to have been sealed with the seal of a corporation. No proof was offered of the authenticity of the seal as that of the corporation. Chief Justice Kinsey examined the question with care, and determined that the offer of the lease was properly overruled. Professor Wigmore quotes at length from this case, and with apparent approval.

In *Osborne* v. *Tunis,* 25 *N. J. L.* 633, 657, this court considered the admissibility of the official record of a deed purporting to be the deed of the commissioners of the loan office of the county of Morris (a corporation). By the statute, such record of a duly proven deed would be legal evidence. The proof of the subscribing witness stated that he saw "the

grantors John Mills and Joseph Lewis seal and deliver the within written deed as and for their voluntary act and deed * * *." The record was held incompetent on several grounds, one of which was that "there is no proof that the seal affixed to the deed was the seal of the corporation, or that it was affixed to the deed as the corporate seal, as prescribed by the act." Another ground was based on the form of proof of the paper as the deed of Mills and Lewis and not that of the corporation, which is similar to the form accompanying the Sterling company paper, *supra.*

In *Vaughan* v. *Hankinson,* 35 *N. J. L.* 79, a Supreme Court case, opinion by Chief Justice Beasley, plaintiff, sued for a doctor's bill, and to prove his status offered in evidence a writing which upon its face purported to be a diploma under the seal of the Medical Society of New Jersey, which was admitted in evidence over objection that no evidence was offered to identify the corporate seal in question. The Chief Justice, citing a number of cases, particularly from England, said, "the general rule undoubtedly is that a seal of a corporation will not be noticed *ex officio* by the courts, and that its authenticity must be shown by testimony;" and that the seal of the medical society was no exception to the rule. To the like effect are *Leazure* v. *Hillegas,* 7 *Serg. & R.* 313; *Jackson* v. *Pratt,* 10 *Johns.* 381. Professor Wigmore says (section 2169-1) that this seems clearly to be the English rule, though (2) the American cases are not wholly in accord. However, in 14 *C. J.* 337, § 407, the rule is stated as in our own cases, and we agree with Professor Wigmore that it is a "simple and safe solution" of the matter. There is no more reason why the seal of a private corporation, or the signature of its president, should prove itself, than that the signature of a private individual should prove itself; and ordinarily it is a perfectly simple matter to prove either by parol testimony. As we have noted, the two papers were offered without a word of testimony of their authenticity. We may assume for present purposes without deciding, that a corporate seal once proved, would operate as authenticating the signatures; but in such case, if there be no proof of the

seal, there is none of the signature, and an objection on that score would consequently be well taken.

Nor was this cured by the cross-examination of the plaintiff, where he was asked:

"*Q.* They gave you an assignment to these premiums, did they not? *A.* Yes, they gave me authority to start suit in behalf of the companies."

"*Q.* That is all, and you still have to settle with the companies for the premiums? *A.* Yes, I have to turn over to the companies the premium from the suit." So far as this shows anything, it shows merely that plaintiff was authorized to bring suit in the name of the companies, not in his own.

Nor do the ostensible notarial certificates or the "jurat" help the matter. Each paper purports to be an assignment of a chose in action. Neither is an affidavit (*Comp. Stat., p.* 3774, *pl.* 34), and if were, the certificate of the notary does not comply with the statute. They are not instruments which by section 21 of the Conveyance act (*Comp. Stat., p.* 1541), as amended, may be acknowledged or proved, and recorded; and if they were, the acknowledgment or "proof," such as it is, does not comply with the statute. *Ibid.,* § 22. The statement in the opinion below, that they "were duly executed by the proper officers of the respective companies under their corporate seals" has no evidence in the case to support it; and the same may be said of the further statement that they "were duly proved before persons authorized to take acknowledgments of sealed instruments;" and as we have said, if they were so proved, we know of no law or statute that would for that reason make them admissible of themselves in a court of law. It was therefore error to admit them, and this error goes to the root of the case and requires a reversal. This result is unfortunate for the plaintiff, as we concur with the view of the Supreme Court that there was no error on any other branch of the case; but a fundamental rule of evidence cannot be ignored or altered simply to uphold a judgment which may or may not be meritorious.

. The judgment is therefore reversed, to the end that a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, KALISCH, CAMPBELL, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ.   11.