The Chancellor
intimated, that if either party desired it, he should be disposed to send the question to the supreme court, as the more proper tribunal for its decision; but if not, he would decide it. Neither party expressing such desire, the chancellor said he should hold that the mortgages- were well sealed. The opinion is as follows.
The Chancellor.
I do not consider the decisions of the supreme court in reference to ink scrolls, as ruling this question. According to Lord Coke, a seal is wax with an impression, because wax without an impression is not a seal. “ Sig ilium cst cera impressa. quia cera sine impressione non esl sigillum.” It is dear that by this definition the impression makes the seal. It is true that if this definition is strictly taken, there must not only be an impression, hut that impression must be made on wax. But the impression is the sine qua non of Lord Coke’s seal; the wax is only auxiliary; it adheres to the paper and receives the impression, and is the material which annexes the *56 impression to the instrument. But we have long since grown out of the substance or essence of Lord Coke’s definition, the impression; the question is, are we yet fast in the wax?
We have said by long practice, that both-these were not necessary. With which of them would Lord Coke have been the better satisfied ? Clearly with the impression; nay he would not have dispensed with that at all. What proportion of the seals used on private papers n'ow-a-days would fall within his definition ? A wafer placed at the end of the name, with a piece of paper on it, or without the piece of paper, and without any impression, is a seal; and by the same rule or reasoning or absence of reasoning, a drop of sealing-wax dropped in proper position in relation to the name, and without impression, or bit of paper upon it, would be a sealprovided the writing called for a seal. Lord. Coke’s definition has been entirely departed from, and the mere wax or wafer, put on to receive the seal, is recognized as the séal. How can it be said that the impression, the essence of the definition, appearing on the paper, is no seal, because it is impressed without wax? Chief Justice Kent, in the case of Warren v. Lynch, 5 John. Rep. 238, which decides that an ink scroll is no seal, says, “ The law has not, indeed, declared of what precise materials the wax shall consist; and whether it be a wafer or any other paste or matter sufficiently tenacious to adhere and receive an impression, is, perhaps, not material.” Is any such matter material, then, if the seal can be impressed without it? In the above cited case Chief Justice Kent says, “ the scroll has no one property of a seal.” It is evident from this that he does not consider a scroll as an impression ; and here there is a distinction between the case of Warren v. Lynch, as to scrolls, and the like decisions of our supreme court, and the case béfore us; for here the impression appears, and it is the impression of the corporate seal, the known, recognized and distinctive seal of the party executing the paper. If wax without the impression of a distinctive seal has come to be a seal, I do not see why the impression of a distinctive seal on the paper itself should be rejected as no seal, simply because it is made to appear on the paper without wax.
Perhaps as succinct and sensible an account of the ancient use of seals as is to be found, is that given in I Morgan's Es *57 says, 83. It is there said, “ The seals of private persons are not full evidence by themselves, for it is' not possible to suppose these seals to be universally known, and consequently they ought to be attested by something else, i. e. by the oath of some that have knowledge of them; [that is, knowledge that the person whose seal it purports to be, uses that seal;] and when these seals are thus attested,- they ought to be delivered in to the jury, because though part of their credit arises from the oath that gives an account of their sealing, yet another part of their credit arises from the distinction of their own impression; for certainly every family had its own proper seal, as it is now in corporations. By this they distinguished their manner of contracting one from the other, and by false impressions of the seals they discovered a counterfeit contract; and therefore it was- not the oath, but the impression of the seal accompanying it, that made up the complete credit of the instrument. But since, in private contracts, the distinction of sealing is in general worn out of use, and men usually seal with any impression that comes to hand, to be sure, there must be evidence of putting the seal; because at this day little can be discovered from the bare impression.” This is of course spoken of private seals as now used, and not of corporate seals.
In 1805, Justice Livingston, in delivering the opinion of the eourt in Meredith v. Hinsdale, 2 N. Y. Term Rep. 362, holds this language: “ However ancient the use of seals, as a mark of authenticity to instruments, may be, or to whatever cause their origin maybe ascribed ; it is certain that in modern times, a private seal is not regarded as evidence of truth, or of belonging to the party to whose signature it is affixed ; but that men promiscuously use each others’ seals, without attention to the impression or coat of arms. Thus it is no uncommon thing to see a seal containing the device, arms and perhaps name of one person, used to authenticate the instrument of another. If it be not necessary, then, that in sealing a deed the grantor should affix his own, but may adopt the seal of a stranger ; why should it be exacted, that the materials on which the impression is made should be of wax, wafer or any other particular composition Í Why should not any impression or mark answer as well as the common mode of sealing, provided it be *58 durable, whether it be stamped omthe paper" itself,’ or'on soitie-thing laid upon it, if it be made as a solemn act of confirmation, and: deliberately acknowledged as the seal of the party making it.”. But the cause was decided on another point. The instrument being made in Pennsylvania, where a scroll' is recognized as a seal, the'court in New-York treated it as such, adopting' the" law of the place of the contract. At 'this time Kent was chief justice,- and Thompson,- Livingston, Spencer and Tompkins justices.-
Five years afterwards, the question'eame up again before .the supreme court of New-York in the case of Warren v. Lynch, 5 John. Rep. 238. Kent, chief justice,- and justices Thompson and Spencer, were still on' the' bench, and the places of justices Livingston and Tompkins had been supplied by justices Yan Ness and Yates. The question in this - case arose on a paper writing in other respects in the form of a note, concluding, “ witness „ my hand and seal,” signed by the maker, with the letters L. S. enclosed in an ink scroll, placed at- the end of the name, where a seal is usually affixed to sealed' instruments. The question was, whether by the laws of New-York this was a sealed instrument-.. The opinion was-' delivered by the chief justice. Before proceeding to -examihe’the question, he takes occasion to say, that what was said By Justice Livingston, in Meredith v. Hinsdale, in reference to the ink scroll, was his own opinion, and not' that of the court'. He then says, that the object in requiring seals, as he presumes, was misapprehended by President Pendleton and by Mr. Justice Livingston. It was not, as they seem to suppose, because the seal helped to designate the party who affixed it to his name: for one person might. use another’s seal. The policy of requiring seals consists in giving ceremony and solemnity to the execution of important instruments, by means of which the attention of the parties is more certainly and effectually fixed. Now these two ideas are not at all opposed to each other: the reason may be, as Chief Justice Kent states, to give ceremony and solemnity, and yet-the seal might, and no doubt did in ancient times, help to designate the person who affixed it to his name. The expression, “ one person might use another’s seal,” is proof that in ancient times, before chirography became general, some had *59 their distinctive seals, and that the seal helped to designate the person who affixed it to his name; and if it were not so, why the ancient idea of giving sealed instruments to the jury?
A word as to the solemnity spoken of by Chief Justice Kent. Does it consist in the mere symbol ? Is there any more solemnity in a bit of wafer, than in a scroll made with a pen? The feeling of solemnity, if any, attending-the execution of a sealed instrument, arises from a sense of the effect of the instrument, and not from the symbol used to characterize it as a sealed instrument; and as to the remark of the court, that to adopt a scroll for a seal would be to abolish.all distinction between writings sealed and writings not sealed, I apprehend, with great respect, it was not well considered. Our statute, authorizing a scroll for a seal to money bonds, has had no such effect; and on the principle above stated could have no such effect.
Instruments are now proved by proving the putting of the seal, by producing the subscribing-witness, who swears to the signature and the acknowledgment of-the seal. The seal may be wax or wafer, without paper or with, and without impression : and the same man may use, as a seal, one thing to-day, and another to-morrow. As seals are used now, there seems to be no good reason why I may-not affix a scroll and acknowledge that to bo my seal.
But it is not necessary on this occasion, to come in conflict with the decisions of the supreme court as to ink scrolls. I am of opinion, that the impression of a distinctive corporation seal, on an instrument calling-for the.seal .of the corporation, is a lawful seal.