Crawford v. Longstreet

MARY J. L. CRAWFORD ET AL. v. JOHN L. LONGSTREET ET AL.

1. A turnpike company has, as incident to the purposes of its incorporation, a right to take and hold under lease necessary premises for storing implements used in road repairs and for sheltering its servants. It is within the meaning of the necessary rights and powers conferred in its charter.

2. To bind a corporation under a lease for years, execution under its corporate seal is not requisite.

3. A corporation may hold as tenant from year to year.

In trespass *quare clausum fregit.* On error to Monmouth Circuit.

Argued at February Term, 1881, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER, and KNAPP.

For the plaintiff in error, *Wm. H. Vredenburgh.*

For the defendant in error, *C. Robbins.*

The opinion of the court was delivered by

KNAPP, J. This was an action of trespass *quare clausum,* tried at the Monmouth Circuit. The facts in the case essential to its determination were not in dispute, and the court

below ruled that, under the law applicable to the facts, the plaintiffs were.not entitled to recover, and thereupon directed . a verdict for defendants.

The writ of error brings up the exception sealed to this direction of the judge, thus presenting the body of the case for review. :

The plaintiffs had title as tenants in common in fee, to the *locus in quo*, acquired on the 17th of April, 1879, through several mesne conveyances from Josiah Beers.

On the 9th of August, 1870, Josiah Beers, being then owner, executed, under his hand and seal, a lease of the *locus* to "The Holmdel and Keyport Turnpike Company" for the term of five years from the 1st day of April then last past, with the privilege of ten years from the beginning of said term at the same rate and terms, for the yearly rent of $50. The lease was executed on the part of the company by its then president, but without the use of its common seal. The company went into the possession of the premises under the lease, and continued to occupy them, paying the yearly rent therefor as it became due, to the lessor and his grantees, down to the 1st of April, 1879, and then entered upon its occupancy for another year. The premises were used by the company to store carts, tools and implements used in the work of repairing and maintaining the turnpike road and .stabling its teams. The house on the premises was occupied by a servant of the company having charge of its property there.

About the 1st of October, 1879, certain persons being engaged in removing a discharged servant of the company from the premises, after disposing of his effects, removed from the premises, without the authority or consent of the company, all its property and goods found thereon, and took possession in behalf of the plaintiffs. The plaintiffs adopted their acts. Shortly thereafter the defendants, as officers and agents of the company, on coming to the property, found the doors closed against them, and the parties mentioned in the house opposing their entrance. The defendants forced the

entrance door, gained possession, and ejected the plaintiffs' agents from the demised premises. This act of the defendants constitutes the alleged trespass. The defence is that the plaintiffs were not lawfully in possession, and that the defendants' entry upon the lands was in virtue of the rights of the company as tenant of a term not yet ended.

The court below, in directing the verdict for the defendants' ruled that the company, whose agents the defendants were, was lawful tenant of the *locus in quo* at the time of the alleged trespass under the lease, or as tenant from year to year; that the plaintiffs were not lawfully possessed of the premises when the defendants entered; and that as respects this suit, the entry of the defendants was legally justifiable.

The correctness of these rulings is attacked on grounds which will be considered.

The demise to the company was for a principal term of five years, with the privilege to the lessee of a further term of five years. The extended term would not have expired by efflux of time at the date of the alleged trespass. On the trial of the cause a doubt seemed to exist whether the lessee had exercised its option for the larger term. But it was established in proof, and not controverted, that the lessee had, on the expiration of the shorter period, continued in the use and occupation of the demised premises as before, paying rent to the owners of the fee yearly, after the manner and of the amount stipulated for in the lease. If this were not plenary proof of the purpose to hold for the balance of the term, it created a tenancy from year to year, if the company could hold by such tenure; and it became thus immaterial whether the option had been exercised or not, as possession under either tenancy was equally good for the purposes of defendants' defence.

The plaintiffs challenge the ruling of the court below maintaining the legality of the company's tenancy, on the ground, *first*, that it is not invested with the power to take or hold lands for the purposes to which these were devoted by the company, either by any express authority given by the charter, or through necessary implication arising out of the quality

and objects of the grant. That the charter does not give the power in express terms is true; but if such tenement, in view of the uses to which it was put, be necessary to carry into effect the objects which the legislature had in mind in creating the corporation, the right to so hold and employ it would pertain to the corporation as an incident to the grant. *Leggett* v. *Manufacturing Co., Saxt.* 541.

In addition to the definite powers given, the twentieth section of the charter (*Pamph. L.* 1859, *p.* 241,) confers on the company all the "rights, powers, and privileges *necessary* to carry the objects of the act into effect." The plaintiff in error contends for a construction of the words "necessary rights, powers, and privileges," used in the act, which is entirely too narrow and rigid to give reasonable effect to the design of the legislature, viz., that it confines the corporation to such incidental privileges as are of indispensable use, and without which the purposes of the charter must have an end. It may be conceded that a house and premises in which to store tools and implements needed in the repair of the company's road, and stables in which to keep necessary teams, and a habitation for their servants and laborers, is not strictly indispensable as a means to the end of repairing and maintaining the public road as the law required it to do. But that such an arrangement was convenient, useful, and essential to the proper management of its business scarcely admits of denial.

It is not easy to find any good reason for assigning so strict and severe a limit of meaning to those terms as that claimed by the plaintiffs, and the adjudged cases do not warrant it.

In the case of *N. J. R. R. & T. Co.* v. *Hancock,* 6 *Vroom* 537, the Court of Errors, having under consideration like phraseology in a railroad charter, held the term "necessary" as comprising within its fair and legitimate import "all such means as are suitable and proper to accomplish the end which the legislature had in view at the time of the enactment of the charter."

Effect was given to this charter, in consonance with the rule of interpretation in the case mentioned; the objection is therefore invalid.

Crawford v. Longstreet.

*The second* ground of error is that the court below sustained the validity of the lease to the corporation, against the plaintiffs' objection that it was void because not executed under the corporate seal of the company. This contention was founded upon the ancient rule of the common law that a corporation could neither act, speak, nor *whisper* apart from the instrumentality of its common seal. But the rule, opposed as it was to the demands of practical business necessity, suffered at an early day, in England, important modifications; and in this country, since the decision in *Bank of Columbia* v. *Patterson*, 7 *Cranch* 304, the doctrine has received but slight recognition, and now it may be considered as practically abrogated. In this state, in the case of *Baptist Church* v. *Mulford*, 3 *Halst.* 182, the subject received full consideration in the Supreme Court, and the authorities bearing on the subject were quite fully collated. Since the decision in that case the question has, in this state, been considered as at rest.

It may here be considered as settled law that a corporation, when acting within the scope of its powers, stands, in respect to its ability to contract, substantially upon the same footing as do natural persons. Contracts made on its behalf by authorized agents, though by parol, are *express* contracts, and, as in the case of individuals, the law will on ordinary grounds imply promises against it. When, in its transactions, a *deed* is under the law the requisite mode of contracting, its seal is necessary. A deed was not essential in the execution of this lease. *Marbury* v. *Johnson*, 3 *Green* 117.

Execution of the lease by an authorized agent of the company was valid and effectual to create the term without the use of corporate seal. An entry upon the use and occupation of the land under a lease purporting to be made by the agent of the company, and paying rent pursuant to its terms, is sufficient to bind the corporation to the lease. The agent's authority to act may be shown as well by subsequent ratification of his acts as by proof of a previous appointment. *Taylor L. & T.*, § 128; *Hoyt* v. *Thompson's Ex'rs*, 19 *N. Y.* 218; *Brahn* v. *Jersey City Forge Co.*, 9 *Vroom* 74.

A third point is made against the existence of a tenancy, namely, that the term created by the lease—if it be valid— had expired for want of any act of renewal at the end of the first period of five years; and that thereafter the company were in at sufference, they having, as contended, no power as a corporation to hold as tenants from year to year.

It is assumed that, under the terms of the lease, some affirmative act of renewal on the part of the lessor was requisite to give effect to the lessee's right to the full term of ten years stipulated for in the lease. But this is not the meaning of the contract. The demise was for a term of five years, with the privilege of ten years from the beginning of the term. The privilege to occupy the premises for the full term was conferred upon the lessee.

It gave it the right at its option to have the demised premises for the full period stipulated. It was not a covenant for renewal, and no act of the lessor was requisite to so enlarge the term. And where, as in this case, a lessee continues in possession after the expiration of the first limit of time, paying the stipulated rent, he will be considered as having elected to hold the premises for the full term. *Delashman* v. *Berry*, 20 *Mich.* 293.

But to turn to the other proposition, that an incorporated company is denied the legal power to hold upon an implied contract as tenant from year to year. It is quite clear, I think, that there exists no such legal impediment. No American case is referred to, nor is any found asserting such a rule. The cases cited in its support are from the English courts. That of *Finlay* v. *Bristol R. W. Co.*, 7 *Exch.* 409, stands prominent amongst those upon the point, and so decides. To the same effect are several cases referred to in the opinions delivered by the court in that just mentioned. But this result is expressly based upon their theory of the law, that corporations can contract only by their common seal, and when such tenancy rests upon implied contract arising out of the circumstances of occupation and payment of rent, only those who can bind themselves by such contracts can

hold by that tenure; corporations, say they, cannot contract by parol.

Under our view of the law, as already shown, private corporations are, with us, under no such restriction, having within the range of their chartered powers the same ability to contract that pertains to natural persons. The reason of the rule in the English courts has, therefore, no application here. It would, I think, be difficult to suggest any other rational ground for a rule that a corporation, having power to hold lands for a term of years, should be debarred from the advantages, or absolved from the liabilities, that arise from such a tenancy. It certainly would not be held here that a corporation, in the occupation of premises under circumstances that would create a tenancy from year to year in a private individual, could abandon the premises after a new year had been entered upon, without being liable for the whole year's rent; or could terminate such tenancy at the end of the year without giving the prescribed notice to the landlord. The court below ruled rightly upon the tenancy of the company.

The acts of the defendants were as its agents, and they were sheltered under its rights.

The possession which the plaintiffs claimed was gained by an entry of their agents upon the possession of the company during such term, without the authority or consent of the company, and was, as against it, unlawful and a trespass.

One in the actual possession of premises may maintain trespass against any person except him who has a right of possession. But the plaintiff must show such a lawful possession as the defendant has no right to disturb. A possession may be good against a mere wrong-doer, which will give no right of action against him who is lawfully entitled to enter. *Lambert* v. *Stroothe, Willes* 221; *Graham* v. *Peat*, 1 *East* 246; *Catteris* v. *Cooper*, 4 *Taunt.* 547.

The injury of which the plaintiffs complain, and which they must prove to sustain their action, is that their rightful possession of the *locus* was *wrongfully* and forcibly invaded by the defendant. This, we think, they have failed to establish,

but, to the contrary, it clearly appears that the defendants, representing the rights of the company, were the only lawful possessors of the premises. The court was right in taking control of the case, and in shaping the result as it did.

If the company's agents, in asserting and maintaining in its behalf this rightful possession, committed a breach of the peace, they are answerable for that to the state. If, as is asserted, they committed an assault upon any of the persons found upon the premises, for that there is legal redress. It was not committed upon the plaintiffs, or either of them, for neither of them was present; and for that wrong to others, redress does not lie with them.

One of the defendants pleaded, in justification, his entry as a constable in the execution of criminal process against persons supposed so be there, and it is objected that, as the good faith of his actions was in issue under this plea, that question should have been submitted to the jury. But he pleaded as well the general issue, and under that plea it was competent to show a right of entry in a third person, under whose authority he was acting. *Todd* v. *Jackson*, 2 *Dutcher* 525. If he made good this defence it could not be detracted from by a finding either way upon the other issue.

Other assignments of error question the legality of the judge's ruling in the admission and rejection of testimony. They were not discussed or alluded to by counsel, and it seems unnecessary to consider them.

We think no error appears in the record, and judgment of affirmance must be entered.