57 N.J. Super. 196 (1959)
154 A.2d 369
CITY OF TRENTON, A MUNICIPAL CORPORATION, PLAINTIFF-CROSS-APPELLANT,
v.
FOWLER-THORNE COMPANY, A CORPORATION, AND SEABOARD SURETY COMPANY, A CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 1959.
Decided September 10, 1959.
*198 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Richard J. Casey argued the cause for defendants-appellants (Mr. Frank I. Casey, attorney).
Mr. Harvey L. Stern argued the cause for respondent, cross-appellant (Mr. Louis Josephson, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
This matter comes before us on appeal and cross-appeal taken by leave of the Appellate Division from an order of the Superior Court denying defendants' motion to dismiss the action as barred by the statute of limitations. The parties have filed an agreed statement in lieu of record, and we consider the cause on the basis thereof, pursuant to R.R. 1:6-2.
The action was brought by the City of Trenton on June 27, 1957 against the defendant Fowler-Thorne Company, as contractor, and against the defendant Seaboard Surety Company, as surety on a public construction performance bond, in connection with a claimed breach of contract by Fowler-Thorne in the performance of an agreement with the city for the erection of an addition to a municipal hospital building. The contract was executed September 15, 1949, and the work accepted and final payment ordered by resolution of the board of commissioners of the city on August 2, *199 1951. The action is based upon alleged defects in the building which became manifest some time later.
The defendants answered jointly August 14, 1957, denying liability for the condition of the building and raising the defense, among others, that "the suit was improperly started in the name of the City of Trenton in that it was started on the instructions of a single Commissioner rather than the Board of Commissioners, as required by" a 1947 resolution of the then city commission. On May 15, 1958 the board of commissioners adopted a resolution by which "the suit heretofore authorized and commenced by the City of Trenton * * *" was "authorized, ratified and confirmed." Thereafter, when the action was called for trial, defendants were granted leave to amend their answer to include the defense of statute of limitations, and the court ordered that this issue be resolved by motion in advance of trial. In the course of argument and briefs on the motion, the city argued: (1) the incidence of the six-year limitations statute covering ordinary contractual causes (N.J.S. 2A:14-1) is here immaterial as the bond executed by the defendants was an "obligation under seal conditioned for the payment of money only," in respect to which the period of limitations is 16 years (N.J.S. 2A:14-4); (2) the six-year limitations period is inapplicable in any case as the action, which was concededly instituted within six years of the accrual of the cause of action, was properly brought in the name of the city on the authorization of the director of public affairs; or, in the alternative, that any lack of authority in that regard was cured by the ratifying resolution of the city commission.
The trial court in oral conclusions held: (1) the institution of the action was not legally authorized; (2) the ratification of the action by resolution of the commission could not legally relate back to the date of institution of the action so as to preclude the "intervening" defense of limitations, if, as a matter of law, the six-year period was applicable to the case; (3) the six-year period was not applicable *200 as the action was upon a sealed instrument, covered by the 16-year period. The motion for dismissal was accordingly denied.
A preliminary procedural point must be noticed. As the order of the trial court on the motion was in favor of the plaintiff, it was technically not aggrieved thereby and would have no right of appeal merely because the opinion of the court ruled against its position on some of the points argued, since appeals are taken from judgments and orders (where otherwise appealable, either as of right or by leave of court), not from opinions. Hughes v. Eisner, 8 N.J. 228 (1951). However, in the order granting defendants leave to appeal, this court included a provision giving plaintiff leave to cross-appeal. We take it the intention of the order in the latter respect was to enable this court to deal with the entirety of the dispute dealt with by the trial court on its merits, whether the issues were raised by plaintiff or defendants. That objective being a salutary one, and no objection having been offered, we will deal with the meritorious questions raised in the plaintiff's purported "cross-appeal." Indeed, we have found that we need consider only those in order to dispose of the defendants' appeal.

I.
Attention is first directed to the city's contention that the action was properly instituted on the authorization of the director of public affairs, Commissioner Holland. Were it not for the implication of the issue of limitations, this question would not be important, since an action instituted by an agent without proper authorization from the plaintiff will not, for that reason, be dismissed in the face of subsequent ratification by the principal. See Sayre v. City of Orange, 67 A. 933 (Sup. Ct. 1907) (not officially reported). Although, for reasons set forth in Point II of this opinion, we have concluded that there was ratification sufficient to bar the defense of limitations, we address ourselves first to *201 the disposition of the argument of the city that the motion is disposable on the ground of sufficient authorization of the action in the first instance.
The City of Trenton is a municipality governed and operating under the commission form of government, pursuant to the Walsh Act, N.J.S.A. 40:72-1 et seq. Under that act (R.S. 40:72-5) it is provided that the elected board of commissioners "shall determine the powers and duties to be performed by each department and shall assign such powers and duties to each department as it may deem appropriate."
The argument of the city rests upon the ground that by a resolution of a former city commission, adopted in 1943 (Resolution No. 4378) and never altered thereafter, authority to institute an action involving the subject matter of a particular department, as here a hospital building allocated for administration to the director of public affairs, resides in the same official. The claimed authorization is concededly not expressed in the resolution but is argued to be sufficiently implied therein. We pass the question, not argued, as to whether an allocation of departmental subject matter survives the life of the then incumbent commission, at least until contrary action by a later-elected commission. Cf. Oliver v. Daly, 4 N.J. Misc. 80 (Sup. Ct. 1926) modified on another ground 103 N.J.L. 52 (E. & A. 1926).
We do not find the city's argument sustained by the language of the resolution. It gives each director "charge and supervision" over all lands and buildings devoted to the use of his department "and the improvement, construction and repair thereof * * * and the replacement thereof," subject to the provisions of any law, ordinance or city regulation, and directs him to "approve and recommend to the Board of Commissioners the acceptance of any building or other improvement constructed under his supervision before final payment is made therefor." We cannot read this language fairly to imply an allocation to the sole discretion of the director of a single department of the determination *202 of whether an action should be brought by the city for breach of contract in relation to the construction of a building merely on the basis of the devotion of that building to the uses of the particular department. The resolution plainly implies that the director may not even accept such a building, but may only recommend acceptance. He certainly could not authorize construction of the building in the first instance. See Simon v. O'Toole, 108 N.J.L. 32, 44-46 (Sup. Ct. 1931), affirmed, o.b., 108 N.J.L. 548 (E. & A. 1931). That right is, moreover, expressly reserved to the commission elsewhere in the same resolution. There is no merit in the argument erected upon the 1947 resolution.
The city also argues that a commissioner "acting singly within the administration of the duties assigned to him can do an affirmative act in the name of the city, unless prohibited by statute or ordinance, or where the action to be taken requires the passage of an ordinance." We might be inclined to agree with this abstract statement if it were understood that the statutory prohibition is applicable by implication as well as express statement. See Simon v. O'Toole, supra (108 N.J.L. at page 45). But we do not agree that the proposition stated covers the case before us. We do not find that Director Holland was acting in the administration of the duties assigned to him when he directed the institution of this action.
We note, parenthetically, the recent sweeping dictum of the Supreme Court in Slurzberg v. City of Bayonne, 29 N.J. 106, 110 (1959), that there could "be no doubt" that the decision of a Walsh Act governing body to invoke the judicial process to settle the municipality's controversy over its water rights with the North Jersey Water Supply Commission "was the exclusive province of the board of commissioners as the city's governing body." Although the holding in that case did not require a decision on the point mentioned, and there was apparently no argument thereon, a considered dictum of that tribunal is to be accorded great weight in this court. However, we are not called upon here to decide *203 whether a Walsh Act city commission may lawfully delegate general authority to institute litigation for the municipality to a single commissioner as our conclusion is that Trenton did not delegate that power in respect to the present litigation to the department of public affairs by the 1947 resolution, the only basis for such authorization claimed by the city.

II.
We turn to the alternative position of the city that any lack of initial authorization for the suit was cured by the ratification resolution of May 15, 1948, thereby preserving the viability of the action in all its incidents, including the date of its institution, June 27, 1957, which was well within the six-year statute of limitations. The answering argument of defendants is that since ratification did not take place until after the lapse of six years from accrual of the action, it cannot be effective to bar the defense of limitations because the running of the period prior to ratification gave defendant a vested right to that defense protected from impairment by any subsequent action of the city in the nature of affirmance or ratification. Particular reliance is placed upon the holding in State v. Standard Oil Co., 5 N.J. 281, 293 (1950), to the effect that the running of the statute of limitations prior to the institution of an action creates a vested immunity in the defendant to an action sought to be validated by a subsequent legislative extension of the period.
Before further inquiry into the legal justification for defendants' position, we take note of the fact that, in passing upon the motion, the trial judge stated: "* * * Commissioner Holland independently commenced suit, and I take it that he did it on the informal, informal (sic) assent of the Commission." This finding (or assumption) is not challenged by defendants, and we assume it was supported by proofs or concessions at the argument of the motion, or *204 at least not controverted by defendants. Nothing to the contrary is suggested on this appeal. Thus, it is fair to assume that the institution of the action in fact accorded with official city policy, or was at least without opposition in the governing body. The attorney of record in the action was and is the regular city attorney. No one in the city administration ever took any steps to disavow the action or cause its discontinuance. Although, as indicated above, the answer filed August 14, 1957 raised the defense of lack of authorization for the action, the defense of limitations was not asserted until the case was moved for trial, subsequent to ratification of the action by the full commission. There is no indication that defendants were not fully alerted to the existence and bona fides of the city's claim and to the prudence of preparing for its defense on the merits, at the time and by the fact of the institution of the action on June 27, 1957. In other words, it is clear that the public policy underlying statutes of limitations was substantially met in this case.
It is generally stated that a principal's ratification of an agent's unauthorized act will validate the act from its inception unless such validation will impair "intervening rights" of third persons. 2 Am. Jur., Agency, §§ 209, 211, pp. 166, 168; 2 C.J.S. Agency §§ 64, 65, pp. 1137, 1144. A more discriminating statement of the principle has been borrowed by the New Jersey courts from the original Restatement of Agency (now found in Restatement (Second), Agency, § 82, comment b, p. 210 (1958)):
"Upon ratification the consequences of the original transaction are the same as if it had been authorized, except in favor of persons who, because of their wrongful conduct, are not entitled to benefit, and against persons who have meanwhile acquired interests with which it would be unjust to interfere," Goldfarb v. Reicher, 112 N.J.L. 413, 416 (Sup. Ct. 1934), affirmed, o.b., 113 N.J.L. 399 (E. & A. 1934).
This rule has been applied to validate the unauthorized commencement of a legal proceeding, the holdings being that *205 ratification cures the defect in the original action so that it may proceed as if it had been properly authorized in the first instance. Robb v. Vos, 155 U.S. 13, 15 S.Ct. 4, 39 L.Ed. 52 (1894); Massachusetts Construction Co. v. Kidd, 142 F. 285 (1 Cir. 1905); Couch v. Central Bank & Trust Corp., 297 F. 216 (5 Cir. 1924); Bowles v. Wheeler, 152 F.2d 34 (9 Cir. 1945), certiorari denied 326 U.S. 775, 66 S.Ct. 265, 90 L.Ed. 468 (1945); Boyce v. Chemical Plastics, 175 F.2d 839 (8 Cir. 1952); 1 Mechem, Agency (2d ed. 1914), § 529, p. 383. The opinions recite the caveat as to rights of third parties. The Bowles case refers to correction of the defect "without violating any substantial equity" (152 F.2d at page 40). The former New Jersey Supreme Court applied the rule of ratification in Sayre v. City of Orange, supra (67 A. 933), where the unauthorized suit was commenced by the municipal counsel, whose authority was ambiguous but whose action was thereafter considered ratified by the city's resistance to an application for a writ of review. Sayre appears to be the only reported decision of a New Jersey court in which the validity of an unauthorized but subsequently ratified suit was placed in issue by a defendant. Neither this case, any of the cases cited above, nor, indeed, any other discoverable decision in the American jurisdictions involves the additional factor presented in the instant case  a statute of limitations which expired between the date of the unauthorized commencement of the suit and the date of its ratification.
The critical question before us, then, and one of first impression in our courts, is whether the passage of the period of limitations prior to the city's ratification of Director Holland's institution of the action should be held to vest the defendants with an immunity from continuation of the action with which it "would be unjust to interfere." On principle, a negative response is indicated. First, the statute of limitations itself requires no more than that an action on contract "shall be commenced" within six years next after the accrual of the action. N.J.S. 2A:14-1. The instant *206 action was in fact commenced within the period. Acceptance of defendants' position requires indulgence of the fiction that the action was not instituted until the date of ratification. For this we are aware of no justification, either in theory or on the basis of any consideration of equity or fairness militating in favor of defendants. If, as is plain from the authorities cited above, the defect of lack of original authorization to institute the action is not so fundamental as to dictate dismissal regardless of subsequent ratification (apart from limitations), the action cannot be accounted a nullity, but continues to subsist, and the date of its actual institution should, ordinarily, in logic and principle, continue to control as to the incidence of limitations.
Our courts have conceded the inoperativeness of the statute of limitations in the comparable situation of suit brought by a party who lacks legal capacity to do so. In Norko v. Rau, 107 N.J.L. 479 (E. & A. 1930), an action brought under the Pennsylvania death act, the plaintiff was permitted to change the capacity in which he was suing from administrator ad prosequendum to individual claimant. The change was allowed after the statute of limitations had run despite the fact that absent such change the action would have failed, on the theory that the cause of action remained the same and the defendant was therefore not prejudiced even though he lost the statutory defense. And in Scott v. Hoboken Bank for Savings, 126 N.J.L. 294, 299 (Sup. Ct. 1941), affirmed, o.b., 127 N.J.L. 564 (E. & A. 1942), the same rule was applied where the status of a defendant was corrected from owner to mortgagee.
The majority of American jurisdictions are in accord with the liberal view of allowing correction of improper parties after the statute has run. See Annotation, 74 A.L.R. 1266, 1275 (1931). See also Kansas Electric Power Co. of Leavenworth, Kansas v. Janis, 194 F.2d 942 (10 Cir. 1952); Kilbourn v. Western Surety Co., 187 F.2d 567 (10 Cir. 1951); Levinson v. Deupree, 345 U.S. 648, 652, 73 S.Ct. 914, 97 L.Ed. 1319 (1953). In McDonald v. *207 State of Nebraska, 101 F. 171 (8 Cir. 1900), suit was brought by the state treasurer, who lacked authority to institute the action. The state, which was the proper party, was permitted to be substituted after the running of the period of limitations, thus shearing defendant of his defense to the treasurer's suit. But see St. Paul Fire & Marine Ins. Co. v. Continental Bldg. Operating Co., 137 F. Supp. 493 (U.S.D.C.W.D. Mo. 1956), applying the Missouri rule which makes determinative the absence of any beneficial interest in the action in the original party plaintiff.
The New Jersey courts apply two tests in determining whether or not a defective suit brought in good time may be cured after the time has run and still preclude the defense of statute of limitations. These are, first, that the defect must be of such a nature that it is curable without the necessity of dismissing the suit and beginning anew; second, that the cure itself must not subject the defendant to liability of a greater or substantially different kind from that of the original action, that is, the cause of action must remain unchanged. See Levey v. Newark Beth Israel Hospital, 17 N.J. Super. 290, 293 (Cty. Ct. 1952); Russo v. Wright Aeronautical Corporation, 1 N.J. 417 (1949); Welsh v. Board of Education of Tewksbury Tp., 7 N.J. Super. 141, 145-146 (App. Div. 1950); O'Shaughnessy v. Bayonne News Co., 9 N.J. Misc. 345 (Cir. Ct. 1931), affirmed 109 N.J.L. 271 (E. & A. 1932); Magliaro v. Modern Homes, Inc., 115 N.J.L. 151, 157 (E. & A. 1935). The cure here, the ratifying resolution, obviously did not alter the cause of action, and the defendant had notice of it in good time.
Considerations of fairness and equity conduce to the same result as those of legal principle in the case at hand. The policy of the statute of limitations is to "spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314, *208 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (quoted in State v. Standard Oil Co., supra, 5 N.J. at page 295). Under the circumstances surrounding this case the timely institution of suit did subserve the policy objectives mentioned notwithstanding the technical deficiency in Director Holland's authorization to institute the suit. We describe the defect as technical not because it is believed that the prerogative of the commission to control the institution of actions is not substantive and important, as it indeed is, but because the bringing of the present action was, to all intents and purposes, from the findings below, the implementation of undisputed city policy and for the vindication of valuable public rights. Director Holland had not usurped authority contrary to the wishes of the commission. The defendants could not have reasonably failed to take notice from the filing of the action that they were confronted with a bona fide city claim, which they should in prudence prepare to defend. As already noted, the policy of the statute was fairly served. As was stated by Mr. Justice Holmes in a case wherein plaintiff sought to amend his complaint in order to allege an essential element of his cause of action which had been omitted until after the statute had run:
"But when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied." New York Central & Hudson River Railroad Co. v. Kinney, 260 U.S. 340, 346, 43 S.Ct. 122, 67 L.Ed. 294 (1920).
Perhaps a materially different situation would be presented if the action had been brought by a total stranger to the city, and the defendants had therefore reasonably relied on that circumstance in failing to prepare to defend on the merits of the asserted claim and would consequently be prejudiced by an attempted affirmation of the action by the city after the running of the statute.
We are aware that notwithstanding its espousal of the rule of ratification ab initio except in favor of wrongdoers *209 or against persons who have meanwhile acquired rights justly deserving protection from interference (see supra), the Restatement of the Law of Agency has taken the position in its commentaries that the bringing of an action by a purported but unauthorized agent cannot be ratified after the cause of action has been terminated by lapse of time. Restatement (Second), Agency, § 84, Comment b, p. 215; § 90, Comment a, p. 230 (1958). But the only discussion of that conclusion is that found in the "Reporter's Notes" in the Appendix volume of the work cited under § 90, p. 158, and none of the cases there cited involve a statute of limitations situation. Nor is any effort there made at rational justification of the conclusion in terms of justice or fair dealing as between the ratifying plaintiff and the defendant invoking limitations.
The Restatement apparently assumes that the expiration of the period of limitations between institution and ratification of an unauthorized action necessarily vests a right to immunity in the defendant in all cases. We cannot agree. It is clear, as Judge Learned Hand has noted, that "[t]he retroactive effect of a ratification always changes existing rights in some respects, else it would be irrelevant." In re Tidewater Coal Exchange, 274 F. 1011, 1016 (D.C.S.D.N.Y. 1921), affirmed 280 F. 638 (2 Cir. 1922). Therefore the test for effectuating ratification ab initio is not merely whether rights of others will be changed, but whether or not those rights are of such a nature and have been acquired in such a way that allowing them to be changed would result in substantial prejudice or injustice. See Graham v. Williams, 114 Ga. 716, 40 S.E. 790, 791 (Sup. Ct. 1902). Moreover, the Restatement agrees that the ratification should not be precluded where the defendant places reliance on a mere technicality which is later cured by ratification and is not substantially harmed thereby (Reporter's Notes, Appendix, op. cit., supra, p. 157, first column); yet in the case at hand the basis of the defense is, apparently, just such a technical error on the part of the municipal officers *210  the failure to have a resolution of authorization passed in advance of institution of the action.
The cases cited by the Restatement as supporting or rejecting the rule of non-impairment of intervening rights by ratification may be reconciled, for the most part, on the basis of the practical effect which ratification would have had on the party asserting an intervening right in bar of the efficacy thereof. Thus, in those cases which "reject" the rule the third party was not substantially prejudiced by allowing retroactive ratification, while in those which "support" the rule he was. The first category involves situations in which an act which took place prior to the commencement of an action was not ratified until afterwards, the validity of that act being necessary in order to sustain the suit. Into this category fall, first, "the technical defect" cases, in which a written condition precedent to bringing suit, such as demand or attachment bond, was executed by an agent, the principal both had knowledge of and approved the agent's act, but the instrument failed to recite the fact of the agency (these being sealed instruments, the creation of the agency itself was required to be under seal). In such cases there is clearly no prejudice to the defendant in allowing the action to proceed. Payne v. Smith, 12 N.H. 34 (Sup. Ct. 1841); Hutchinson v. Smith, 86 Mich. 145, 48 N.W. 1090 (Sup. Ct. 1891); Mandel v. Peet, Simms & Co., 18 Ark. 236 (Sup. Ct. 1856); Bank of Augusta v. Conrey, 28 Miss. 667 (Sup. Ct. 1855). Second, in the same category, are cases in which the defendant was legally obligated to the principal before suit, the obligation was unauthorizedly assigned to or assumed by the plaintiff before suit, and the subsequent ratification of the pre-suit act subjected defendant to no liability greater than that he would have borne had the unauthorized act either not taken place, Powell v. Henry & Co., 96 Ala. 412, 11 So. 311 (Sup. Ct. 1891), or been originally authorized, Marr v. Plummer, 3 Greenleaf 73 (Me. Sup. Ct. 1824); Palmer v. Seligman, 77 Mich. 305, 309, 43 N.W. 974 (Sup. Ct. 1889); Persons v. *211 McKibben, 5 Ind. 261 (Sup. Ct. 1854). Again, ratification worked no prejudice.
In the other category  those situations in which a right was found to preclude retroactive ratification  fall cases in which an abuse or usurpation of authority was so clearly manifest that defendant reasonably relied thereon, People ex rel. Goldschmidt v. Board of Education, 217 N.Y. 470, 112 N.E. 167 (Ct. App. 1916); Bridwell v. Gate City Terminal Co., 127 Ga. 520, 56 S.E. 624, 10 L.R.A., N.S., 909 (Sup. Ct. 1907), or in which an ambiguity or mistake in reference to the fact of authority placed the defendant in a position of potential liability whether or not he assumed authorization. The classic example of this is the notice to a tenant to quit, for if the notice is unauthorized, he will be liable for unpaid rent if he complies with it, and yet, if it is authorized, he will be liable in trespass if he does not. Where he therefore relies on the apparent invalidity of an unauthorized notice, a consequent attempt at validation thereof by ratification will fail as operating to his prejudice. See Right v. Cuthell, 5 East 491, 102 E.R. 1158 (K.B. 1804); Brahn v. Jersey City Forge Co., 38 N.J.L. 74 (Sup. Ct. 1884). The same reasoning applies to the factually similar situation of a notice to accept an option. Holland v. King, 6 C.B. 727, 136 E.R. 1433 (C.P. 1848).
It is thus apparent that the just resolution of a particular controversy in this area defies the mechanistic application of any fixed rule. The facts and circumstances of particular cases, as always, must mold the application of rules, and, indeed, the rules themselves, if the law is to be the servitor of justice rather than its straitjacket.
The giving effect to ratification in this case serves also the salutary objective of vindication of the rights, if any, of the public of the City of Trenton. See McDonald v. State of Nebraska, supra (101 F. at page 175); Bowles v. Wheeler, supra (152 F.2d at page 40); cf. Swayne & Hoyt v. United States, 300 U.S. 297, 302, 57 S.Ct. 478, 81 L.Ed. 659 (1936). We further note, in passing, that since the point *212 has not been raised or argued, we do not consider the question as to whether the statute of limitations is totally inapplicable here as against a public body functioning in its governmental capacity, the statute being silent in respect thereto. See 17 McQuillin, Municipal Corporations (3d ed., 1950), § 49.06, p. 150.
We hold the action is not barred by the six-year statute of limitations. Perforce, it is not necessary to consider whether, were the action properly to be regarded as not having been instituted until May 15, 1958, it would still be within time on the theory that the action is governed by the 16-year statute applicable to sealed instruments.
Affirmed.
HANEMAN, J.A.D. (dissenting).
This appeal is brought up, as noted in the opinion of the majority, on an agreed statement in lieu of record, R.R. 1:6-2, which discloses that:
On September 15, 1949 plaintiff entered into a contract with Fowler-Thorne Company (Fowler) for the construction of a home for the aged. Simultaneously with the execution of this contract Fowler and Seaboard Surety Company (Seaboard), as principal and surety respectively, executed and delivered to plaintiff a bond. This bond, as it appears in the appendix, reads:
"KNOW ALL MEN BY THESE PRESENTS, that we, the undersigned, FOWLER-THORNE COMPANY, a corporation of New Jersey, of 811 E. Montgomery Street, Trenton, N.J., as principal, and SEABOARD SURETY COMPANY, a corporation of the State of New York, of 75 Maiden Lane, New York, New York, duly authorized to do business in the State of New Jersey having an office at 24 Commerce Street, Newark, New Jersey, as Surety, are hereby held and firmly bound unto CITY OF TRENTON, NEW JERSEY, in the penal sum of Two Hundred Seventy Thousand, Five Hundred and 00/100 ($270,500.00) Dollars, for the payment of which well and truly to be made, we hereby jointly and severally bind ourselves, our heirs, executors, administrators, successors and assigns.
Signed this 15th day of September, 1949.
The condition of the above obligation is such that whereas, the above named principal did on the 15th day of September 1949, enter into a contract with the CITY OF TRENTON, NEW JERSEY *213 which said contract is made a part of this the bond the same as though set forth herein;
Now, if the said FOWLER-THORNE COMPANY shall well and faithfully do and perform the things agreed by it to be done and performed according to the terms of said contract, and shall pay all lawful claims of subcontractors, materialmen, laborers, persons, firms or corporations for labor performed or materials, provisions, provender or other supplies or teams, fuels, oils, implements or machinery furnished, used or consumed in the carrying forward, performing or completing of said contract, we agreeing and assenting that this undertaking shall be for the benefit of any subcontractor, materialmen, laborer, person, firm or corporation having a just claim, as well as for the obligee herein; then this obligation shall be void, otherwise the same shall remain in full force and effect; it being expressly understood and agreed that the liability of the surety for any and all claims hereunder shall in no event exceed the penal amount of this obligation as herein stated.
The said surety hereby stipulates and agrees that no modifications, omissions or additions in or to the terms of the said contract or in or to the plans and specifications therefor shall in any wise affect the obligation of said surety on its bond.
This bond is given in compliance with the requirements of the statutes of the State of New Jersey in respect to bonds of contractors on public works, Revised Statutes of New Jersey, 1937, sections 2:60-207 to 2:60-212[1], and amendments thereof and liability hereunder is limited as in said statutes provided.
 Signed, sealed and delivered FOWLER-THORNE COMPANY
 in the presence of By: J.P. Fowler, Pres.
 Attest: W.R. Thorne
 Eulalia Williams /s/ SEABOARD SURETY COMPANY
 Witness as to Surety By: Robert R. Lemcke /s/
 Attorney-in-fact"
The parties have stipulated that this bond was "to insure the performance of the contract." We express no opinion on the legal effect thereof. See Wilson v. Robert A. Stretch, Inc., 44 N.J. Super. 52 (Ch. Div. 1957). Note, that the copy of the bond included in the appendix does not disclose that a seal was affixed. However, on our request at oral argument the original bond was produced. On the bond, to the right of the signatures of the corporate officers, there appears the common seal of the corporations which they *214 represent. These seals are of the distinctive die type which perforate the paper. The paper is thus permanently impressed with the seal of each corporation, which discloses the name of the corporation, the name of the state in which it was incorporated and the year of incorporation.
By a resolution duly adopted by the board of commissioners of the City of Trenton on August 2, 1951, the work under the contract was accepted and final payment ordered. Thereafter (the facts do not disclose how long thereafter) certain alleged defects appeared in the construction and workmanship of the building, and on or about June 27, 1957 plaintiff filed suit against Fowler on the contract and Fowler and Seaboard on the bond. In their answer defendants denied liability and by way of defense asserted that the suit was not properly commenced, alleging that it was instituted at the direction of only one member of the city commission rather than upon an instruction by resolution adopted by a vote of the board of commissioners.
On May 15, 1958 the board of commissioners of the City of Trenton adopted a resolution which "authorized, ratified and confirmed" the institution of the suit. When the matter came on for trial on May 20, 1958 defendants moved to amend their answer to include as a defense the statute of limitations, asserting that the bond was a simple contract and that the statute had run on August 2, 1957 (six years after formal acceptance by the plaintiff of the work performed under the contract). The trial judge granted the motion, and in the light of the legal questions thus projected, he directed that defendants proceed as if a motion to dismiss had been made based upon the applicable statute. All parties consented to this procedure and the court, having heard counsel, denied the motion. The issue raised before the trial court and now argued on appeal by defendants is whether the bond was a sealed instrument. By cross-appeal plaintiff raises the following issues: (1) whether this suit could be properly instituted by a single commissioner, absent authorization by the commission as a body; (2) whether the *215 board of commissioners by formal resolution effectively adopted or ratified the act of the single commissioner in authorizing the commencement of this suit, and whether such ratification has a retroactive effect.
I would be hesitant to consider plaintiff's "cross-appeal" in the light of the fact that it concerns the oral conclusions of the trial court and not the order of the court (by which plaintiff is not aggrieved), were it not for the fact that the argument advanced by plaintiff in support thereof is tantamount to an answer to defendants' appeal.
I shall first treat of plaintiff's "cross-appeal."

I.
I am in accord with the conclusion of my colleagues that Commissioner Holland lacked the power and authority to direct the filing of suit.

II.
I am not in accord with the conclusion of my colleagues that as a matter of law a ratification by a principal (subsequent to the tolling of the statute of limitations) of the unauthorized institution of a suit by an agent (prior to such tolling) cures the lack of authority of the agent as of the time of the original unauthorized filing and therefore bars a defendant from a plea of the statute of limitations which has tolled in the interval.
In that connection, the City of Trenton contends that the resolution by the board of commissioners on May 15, 1958 ratifying the filing of suit on June 27, 1957 by the municipal counsel compensated for any previous lack of authority and related back to the time of the prior action. Upon ratification, the consequences of the original act are the same as if it had been authorized, except as to those persons who have meanwhile acquired interests with which it would be unjust to interfere. Goldfarb v. Reicher, 112 N.J.L. 413 (Sup. Ct. 1934), affirmed 113 N.J.L. 399 (E. & A. 1934). *216 The bringing of an action by one without authority may be ratified by the person on whose account it was brought unless the statute of limitations runs before affirmance or the defendant is otherwise adversely affected. Restatement, (Second), Agency, Appendix, § 90 (1958).
The authorities, without exception, agree that the retroactive efficacy of an act of ratification by the principal will not relate back to defeat the intervening rights of third persons. 2 Am. Jur., Agency, § 211 (1936); 2 C.J.S. Agency § 65 (1936); 1 Williston, Contracts, § 278A (rev. ed. 1936).
When the statute of limitations has run in favor of a party, that defense constitutes a "vested" right. State v. Standard Oil Co., 5 N.J. 281, 293 (1950), affirmed 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). The suit originally brought by Commissioner Holland was started approximately one month before the end of the statutory six-year period; ratification by the entire city commission did not occur, however, until nine months after the statute had run.
In addition, the Restatement of Agency has set forth the following rule:
"If an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time." Restatement (Second) Agency, § 90 (1958).
In the Comments the Reporter stated:
"The bringing of an action, or of an appeal, by a purported agent can not be ratified after the cause of action or right to appeal has been terminated by lapse of time. If the other party to a transaction has acquired a right in property, or in an employment, or if another has acquired a defense against an action by the principal, the right or defense cannot be destroyed by ratification. * * * [T]he purported principal can ratify the bringing of an action by an attorney purporting to act on his account, if the affirmance comes before a statute of limitations has run on the claim." (Emphasis supplied) Restatement (Second) Agency, § 90, Comments a, c (1958).
*217 In even stronger terms the Supreme Court of the United States had held that:
"* * * The retroactive efficacy of the ratification is subject to this qualification. The intervening rights of third persons cannot be defeated by the ratification. In other words, it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made." (Emphasis supplied) Cook v. Tullis, 18 Wall. 332, 85 U.S. 332, 21 L.Ed. 933, 936 (1873).
Since defendants clearly had a vested right in the defense of the statute of limitations at the time of ratification by the board of commissioners, and since a ratification will not relate back so as to impair or defeat vested rights of third persons (i.e., persons other than the principal and his agent) which have intervened between the time of doing the act and the ratification of the principal, I would hold that if the bond is found to be a simple contract rather than a specialty, plaintiff is barred from recovery by the statute of limitations.
Furthermore, my colleagues have found that under the facts here present it would not be "unjust to interfere" with the vested rights acquired by defendants in the period of the ten months which intervened between the commission of th unauthorized act and its ratification.
I do not deny that such an equitable defense might properly be raised. The difficulty with which I am confronted in this connection arises from the circumstance that this conclusion is reached on a motion before trial and upon a record which has no positive factual basis for such a determination. Such an issue should be subject to full development upon a plenary trial where both parties are accorded an opportunity fully to present the facts. I have grave doubt whether the parties could supply the necessary facts upon the motion sub judice, and whether this issue could be determined upon such a motion before trial. Motions for judgment on the pleadings are no substitute for a plenary trial.
*218 "Consideration of fairness and equity" does not warrant the deprivation from defendants of the defense of the statute of limitations at this stage of the proceedings. Justice to plaintiff, as here administered, could well result in injustice to defendants. An opportunity should be accorded both parties to present the full facts to the court upon a proper pleading and plenary trial, especially since this argument was not urged by plaintiff either before the trial court or before this court.

III.
Since I have concluded that the defendants are not barred from the defense of the six-year statute of limitations, it becomes necessary to consider defendants' argument that the instrument sued upon is a simple contract and not a specialty.
Defendants rely upon Fidelity Union Trust Co. v. Fitzpatrick, 134 N.J.L. 250 (E. & A. 1946) and Coral Gables, Inc. v. Kretschmer, 116 N.J.L. 580 (E. & A. 1936) for the conclusion that the instrument sub judice is one not under seal, since there does not appear in the body nor in the testimonium clause thereof any verbiage or recital indicating an intention that the document be regarded as a sealed instrument. It is to be noted that in Fidelity there appeared opposite the defendant's name the letters "(L.S.)" and in Coral Gables there appeared opposite defendant's name the word "(SEAL)." The court held that an instrument upon which there is printed or impressed or marked thereon a scroll or other device by way of seal (R.S. 1:1-2.1) shall not be deemed a sealed instrument unless there appears a statement in the body of the instrument declarative of such intention. The courts reached that conclusion upon the theory that absent an actual seal there was ever present the danger that a simple contract could be converted into a special contract by the unauthorized or accidental addition of a scroll or flourish to the signature, and the fear that unless there were present some reference to a seal in the *219 body of the instrument the door would be opened "to frauds and forgeries and enable evil disposed persons to prevent the running of the six-year statute of limitations by merely attaching at the end * * * a seal."
The main proof of the authenticity of documents in ancient times "was an impression made on clay, lead, wax, paper or other substance by a die of metal, of stone, or other hard material." Miller v. Weisman, 125 Me. 4, 130 A. 504, 505 (Sup. Jud. Ct. 1925). The device on the seal distinguished the person and acted as a substitute for his signature. But this was before the art of writing was one of the common accomplishments of mankind. With the growth of literacy the written signature has supplanted the seal as a voucher of genuineness. See 2 Blackstone, Commentaries (15th ed. 1809), pp. 304-306, 79 C.J.S. Seals § 2, p. 476; 47 Am. Jur. 488, Seals § 2. This development is accorded legislative recognition by R.S. 1:1-2.1.
Under the common law, the mere presence of the actual seal of an individual upon an instrument was sufficient in and of itself to cause that instrument to be classified as a sealed instrument. Any reference in the body thereof to the sealing was superfluous and unnecessary. In Corlies v. Van Note Admr., 16 N.J.L. 324, 328 (Sup. Ct. 1838), cited in both Fidelity and Coral Gables, the court said:
"If then an instrument is shewn to us, with a seal in fact, that is, with wafer, or wax affixed to it, the law pronounces it, a deed, and that, whether any thing is said in the instrument about a seal or not. It is pronounced a deed, because it has an actual seal on it."
In Coral Gables, Inc. v. Kretschmer, supra, the court said:
"`By common law a seal must be either wax or wafer or some glutinous substance' (Force v. Craig, 7 N.J.L. 272) `or something in the nature of wax' (Overseers of Poor of Hopewell Tp. v. Overseers of Poor of Amwell Tp., 6 N.J.L. 169), * * * Perrine v. Cheeseman, 11 N.J.L. 174."
A "bond" is a "deed," that is "a writing sealed and delivered by the parties." 2 Blackstone, Commentaries (15th *220 ed., 1809), pp. 295, 340. But while the term "bond" imports a specialty or obligation under seal, it is not a bond unless it has been actually sealed and delivered by the parties. Gural v. Engle, 128 N.J.L. 252, 254-255 (Sup. Ct. 1942), reversed on other grounds 129 N.J.L. 63 (E. & A. 1942); 2 Blackstone, Commentaries, supra, at 304. Thus, in the case before us, if the impressions left in the paper of the bond by the distinctive die of each of these corporations are actually the seals of those corporations, as distinguished from "a scroll, * * * or other device * * * by way of seal," then the instrument is, in fact, a deed and the rule of Fidelity and Coral Gables is inapplicable.
A corporation has the power to adopt and use a common seal, R.S. 14:3-1(c); 13 Am. Jur., Corporations, § 142, p. 277; 18 C.J.S. Corporations § 175, p. 581; 6 Fletcher, Corporations, § 2462, p. 192 (1950), and the affixing of a corporate seal to a paper is prima facie evidence that the seal was so affixed by proper authority, 13 Am. Jur., supra, § 145, p. 279; 18 C.J.S. supra § 176, p. 583.
Any contract within the corporate power, if it can be made by a natural person without a seal, may be so made by the corporation, absent contrary charter or statutory provisions. Williston, Contracts, § 271A, p. 787 (1936); 6 Fletcher, Corporations, § 2466, p. 201 (1950); Trustees of Antipoeda Baptist Church v. Mulford, 8 N.J.L. 182 (Sup. Ct. 1825); Crawford v. Longstreet, 43 N.J.L. 325 (Sup. Ct. 1881); Turner & Seymour Mfg. Co. v. Acme Mfg. Co., 91 N.J. Eq. 347 (Ch. 1920).
It has been held that the testimonium clause need not recite the sealing by a corporation to constitute the instrument a specialty, 13 Am. Jur., Corporations, § 1105, p. 1032; 6 Fletcher, Corporations, p. 218 (1950).
In Corrigan v. Trenton Delaware Falls Co., 5 N.J. Eq. 52 (Ch. 1845), Chancellor Halsted discussed at length the nature of private seals. He was there concerned with a mortgage executed by a corporation with its corporate seal affixed and containing a reference to sealing in the testimonium *221 clause. The court there said (5 N.J. Eq. at page 56):
"If wax without the impression of a distinctive seal has come to be a seal, I do not see why the impression of a distinctive seal on the paper itself should be rejected as no seal, simply because it is made to appear on the paper without wax.
Perhaps as succinct and sensible an account of the ancient use of seals as is to be found, is that given in 1 Morgan's Essays 83. It is there said, `The seals of private persons are not full evidence by themselves, for it is not possible to suppose these seals to be universally known, and consequently they ought to be attested by something else, i.e., by the oath of some that have knowledge of them; [that is, knowledge that the person whose seal it purports to be, uses that seal;] and when these seals are thus attested, they ought to be delivered in to the jury, because, though part of their credit arises from the oath that gives an account of their sealing, yet another part of their credit arises from the distinction of their own impression; for certainly every family had its own proper seal, as it is now in corporations. By this they distinguished their manner of contracting one from the other, and by false impressions of the seals they discovered a counterfeit contract; and therefore it was not the oath, but the impression of the seal accompanying it, that made up the complete credit of the instrument. But since, in private contracts, the distinction of sealing is in general worn out of use, and men usually seal with any impression that comes to hand, to be sure, there must be evidence of putting the seal; because, at this day, little can be discovered from the bare impression.' This is, of course, spoken of private seals, as now used, and not of corporate seals." (Emphasis supplied)
The rationale of the Chancellor's opinion is most apt, even in the absence of a reference to sealing in the body of the instrument. The reason for the rule in Fidelity and Coral Gables is not here present. In the case sub judice, there was an actual imprint in the paper of both official common corporate seals. These seals are distinctive. The danger that they are forgeries or fraudulently applied is so remote as to be almost negligible. Their presence on the instrument is prima facie evidence of their authenticity, the authority to affix and the intent to make the instrument a specialty. The door is open to defendants to prove at the trial, upon a proper pleading, forgery, lack of authority, and intent. Van Houten v. Dainty Quality Laundry Corp., 115 N.J. *222 Eq. 516 (Ch. 1934); Robertson v. Burstein, 105 N.J.L. 375 (E. & A. 1928).
There is a distinction, however, between the effect of the affixing of an actual individual seal to an instrument containing no reference to the ensealing thereof and the affixing of a distinctive corporate seal to such an instrument. General Petroleum Corp. v. Seaboard Terminals Corp., 23 F. Supp. 137, 140 (Dist. Ct. D. Md. 1938). The intent of so affixing a corporate seal is ambiguous. It is possible that the corporate seal was impressed merely as prima facie evidence of authority to execute the instrument and not with the intention of making it a specialty. The presence of a corporate seal upon an instrument, absent any reference therein to the ensealing, raises a factual issue as to the intent attendant upon the sealing. In such a case, extrinsic evidence is admissible at the trial to show whether the seal was intended to make the instrument a specialty. General Petroleum Corp. v. Seaboard Terminals Corp., supra; Williston, Contracts, § 271A, p. 787 (rev. ed. 1936). Thus, in the instant matter the presence of the distinctive corporate seals of the defendants raised a triable issue of fact, and hence, the denial of defendants' motions was not error.
NOTES
[1] Now N.J.S. 2A:44-143 to 148.